UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM JEFFREY BURNETT, | ) | |
| JOE H CAMP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00200-JPH-DML |
| | ) | |
| CONSECO LIFE INSURANCE COMPANY | ) | |
| n/k/a Wilco Life Ins. Co, | ) | |
| CNO FINANCIAL GROUP, INC., | ) | |
| CDOC INC, | ) | |
| CNO SERVICES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR PRELIMINARY CLASS APPROVAL**

Plaintiffs William Jeffrey Burnett and Joe H. Camp—former holders of

"LifeTrend" life insurance policies ("Policies")—allege that Defendants breached

their Policies by announcing and implementing changes in the calculation of

Policy premiums and expense charges that caused thousands of policyholders

to surrender their Policies.  Plaintiffs have filed a motion for preliminary

approval of the class action settlement agreement and release.  Dkt. 200.

Plaintiffs seek preliminary approval of a proposed settlement agreement and

release (the "Proposed Settlement Agreement") with only Conseco Life

Insurance Company ("Conseco Life"), preliminary designation of Plaintiffs as

class representatives, preliminary appointment of class counsel, preliminary

appointment of a settlement administrator, and notice directed to all class

members who would be bound by the Proposed Settlement Agreement.  *Id.*

1

Conseco Life has filed its joinder in support of settlement approval.  Dkt. 204.
No party has opposed the motion.  *See* dkt. 205.  For the reasons stated below,
Plaintiffs' motion for preliminary approval, dkt. [200], and Defendants' motion
for joinder, dkt. [204], are **GRANTED**.

## I.
## Facts and Procedural History

On October 5, 2012, Plaintiffs filed their original complaint in the Central
District of California against Defendants Conseco Life, CNO Financial Group,
Inc., and CNO Services, LLC.  Dkt. 1.  Plaintiffs allege that Conseco Life
announced that individual LifeTrend policyholders could no longer maintain
their Policies without paying substantial new premiums and charges as part of
a "shock lapse" strategy designed to induce policyholders to give up their
Policies.

In November 2012, the Judicial panel on Multidistrict Litigation ("MDL
Panel") conditionally transferred the case to the Northern District of California
(No. 10-md-02124; the "LifeTrend MDL").  Dkt. 26.  The LifeTrend MDL
encompassed several lawsuits brought by several different plaintiffs.  One of
the cases, *Brady v. Conseco Life Insurance Co.*, No. 08-cv-5746 (N.D. Cal.), was
filed on behalf of almost all LifeTrend policyholders—including policyholders
who had retained their policies as well as policyholders who had surrendered
their policies.

In December 2011, the MDL Court held that former policyholders no
longer could be included in the *Brady* Rule 23(b)(2) class because former
policyholders had no standing to seek declaratory or injunctive relief, and

2

because the damages they sought were not incidental to injunctive relief.  *See In re Conseco*, No. C 10-02124 SI, 2011 WL 6372412, at *5-6 (N.D. Cal. Dec. 20, 2011).  Former policyholders were thereafter removed from the *Brady* class.

In November 2013, the MDL Court approved the *Brady* settlement and certified two settlement classes—a Rule 23(b)(1) and (2) class of "In Force Policyholders" and a Rule 23(b)(3) class of "Lapsed Policyholders."  *See In re Conseco*, No. 3:10-MD-02124-SI, 2013 WL 10349975, at *1 (N.D. Cal. Nov. 8, 2013).  The *Brady* Lapsed Policyholders class included approximately 190 former policyholders whose Policies had "lapsed."

In April 2015, the MDL Court granted Defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  LifeTrend MDL, dkt. 717.  The MDL Court also dismissed the Burnett Plaintiffs' claims against the CNO Defendants because those claims derived from the Burnett Plaintiffs' claims against Conseco Life.  *Id.*

In May 2017, the Ninth Circuit reversed the MDL Court's dismissal of the complaint and remanded this case to the MDL Court.  LifeTrend MDL, dkt. 728.  In September 2017, the Northern District of California remanded the case back to the Central District of California.  Dkt. 29; dkt. 30.  In January 2018, this case was transferred to this district.  Dkt. 69; dkt. 70.  In April 2018, Defendants moved to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted.  Dkt. 107; dkt. 110.  In September 2019, Plaintiffs moved for class certification, dkt. 162, and subsequently, on March

20, 2020, the Court granted Conseco Life's request to withdraw its motion to dismiss and Plaintiffs' motion for class certification, *see* dkt. 197.

On April 10, 2020, Plaintiffs filed a motion for preliminary approval of class action settlement[1]. Dkt. 200. The proposed class plaintiffs are William Jeffrey Burnett and Joe H. Camp. Dkt. 200-1 at 11 (Proposed Settlement Agreement § 1.45). The proposed class (the "Class") includes:

> [A]ll Persons who owned a LifeTrend 3 Policy or LifeTrend 4 Policy that was surrendered or lapsed on or after October 1, 2008 and before June 30, 2013. However, the Class does not include LifeTrend 3 Policies or LifeTrend 4 Policies included in the class action settlement in a separate lawsuit known as *Brady v. Conseco Life Insurance Company, Inc., et al.*, No. 3:08-CV-5746 (N.D. Cal).
>
> Notwithstanding the foregoing, the following Persons shall be excluded from the Class and shall not constitute Class Members: (1) all Persons who make a timely election to be excluded from the proposed Class as approved by the Court in the Final Approval Order; (2) governmental entities; (3) the judge(s) to whom this case is assigned and any immediate family members thereof; and (4) Conseco Life, Wilton Re, the Wilco Life Affiliates, the Wilco Life Agents, the CNO Defendants, the CNO Affiliates, and the CNO Agents.

*Id.* at 4 (Proposed Settlement Agreement § 1.10).

Plaintiffs have submitted to the Court a 53-page Proposed Settlement Agreement that would resolve their claims against Conseco Life. Dkt. 200-1. Some of the critical provisions are:

- The CNO Defendants are not parties to or beneficiaries of the agreement, and nothing in the agreement shall impair any rights of Plaintiffs to prosecute Claims in this Action or otherwise against

---

[1] The Order incorporates the defined terms set forth in the Proposed Settlement Agreement, dkt. 200-1.

the CNO Financial Group, Inc. and CNO Services LLC. *Id.* at 3 (Proposed Settlement Agreement).

- Conseco Life will pay $27 million in cash to settle the claims of the Class (the "Settlement Fund"). *Id.* at 13, 14 (Proposed Settlement Agreement §§ 1.59, 3.1).

- No Class member will receive less than $500. *Id.* at 19 (Proposed Settlement Agreement § 4.5).

- The amount distributed to the Class will be reduced by the proportional pro rata share of the Settlement Fund attributable to any Opt-Outs. *Id.* at 19 (Proposed Settlement Agreement § 4.5).

- No portion of the Settlement Fund will revert to Conseco Life. *Id.* at 54 (Proposed Settlement Agreement).

- Notices will be mailed to Class members within 30 days after the Court grants Plaintiffs' motion for preliminary class approval. *Id.* at 21–22 (Proposed Settlement Agreement § 6.6).

- Conseco Life reserves the right to withdraw from the Proposed Settlement Agreement if the number of Class Policies requested to be excluded from the Class by opt-out is more than 150. *Id.* at 44 (Proposed Settlement Agreement § 12.5.3).

- Class members may opt-out of the Class by serving written requests for exclusion up to 28 days before the Fairness Hearing. *Id.* at 24 (Proposed Settlement Agreement § 7.1).

- Class members may object to the Proposed Settlement Agreement by filing and serving written objections up to 28 days before the Fairness Hearing[2]. *Id.* at 25 (Proposed Settlement Agreement § 7.5).

- The Settlement Administrator will distribute the Net Settlement Fund in two distributions. *Id.* at 54 (Proposed Settlement Agreement).

---

[2] "[T]he final hearing pursuant to Federal Rule of Civil Procedure 23(e)(2) to assess the fairness, reasonableness, and adequacy of the Agreement. Dkt. 200-1 at 7 (Proposed Settlement Agreement § 1.26).

- Any portion of the Net Settlement Fund that remains unclaimed after the Second Distribution, as well as any funds that are not distributed to Opt-Outs in satisfaction of individual settlements or judgments, will be used to fund a *cy pres* award to the National Consumer Law Center, or alternatively to another recipient designated by the Court. *Id.* at 56, 57 (Proposed Settlement Agreement §§ 7, 4, 6).

- Once the settlement becomes final and Conseco Life funds the Settlement Fund, Plaintiffs and Class members will release any and all claims against Conseco Life (and certain related individuals and entities) based on the LifeTrend Policies. *See id.* at 26-33 (Proposed Settlement Agreement).

- No attorneys' fees, expenses, or Class representative awards will be distributed out of the Settlement Fund without the Court's approval, and the total expenses to be withdrawn from the Settlement Fund will not exceed $1.25 million. *Id.* at 33 (Proposed Settlement Agreement § 9.1.2).

- Plaintiffs may seek a reasonable portion of the settlement fund to be set aside for litigation costs, attorneys' fees, and Class representative incentive awards. *See id.* at 33–35 (Proposed Settlement Agreement).

## II.
## Applicable Law

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *General Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1987) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832 (1999) ("In drafting Rule 23(b), the Advisory Committee sought to catalogue in functional terms those recurrent life patterns which call for mass litigation through representative parties." (internal quotation omitted)). Any settlement that results in the dismissal of a class

action requires court approval.  *See* Fed. R. Civ. P. 23(e); *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002).

The approval process includes two steps.  *Armstrong v. Bd. of School Dirs.,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  First, the court conducts a preliminary review to determine whether the proposed settlement is "within the range of possible approval" and whether there is reason to notify the class members of the proposed settlement and proceed with a fairness hearing.  *Id.* If preliminary approval is granted, the class members are notified and given an opportunity to object.  *Id.*  Second, the court holds a fairness hearing to determine whether the proposed settlement is "fair, reasonable, and adequate." *Id.*; Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, the court's task is to "determine whether the proposed settlement is within the range of possible approval." *Armstrong*, 616 F.2d at 314 (internal quotation omitted).  The court's role is not "resolving the merits of the controversy or making a precise determination of the parties' respective legal rights."  *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985) (collecting cases).  At this stage, Plaintiffs need show only that final approval is likely, not that it is certain.  *See* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

proposal.").  Nonetheless, a court considering a request for preliminary approval of a class settlement must be vigilant to ensure that the interests of the class are well served by the settlement.  *See In re NCAA Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. 2016).

### A.    Class Certification

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate,'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008), and "provides a one-size-fits-all formula for deciding the class-action question." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010).  "A class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains . . . indispensable.'" *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Tel.*, 457 U.S. at 160-61; *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003).  "Although courts can later choose to deny final approval of a class settlement, they should not lightly give preliminary approval, especially in a case in which the costs of preliminary approval—including those related to providing notice—are as high." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and one subsection of Rule 23(b).  *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Arreola*, 546 F.3d at 794.  In addition

to those requirements, the court must determine whether the putative class meets two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity of class members by reference to objective criteria; and (2) that the named representative be a member of the proposed class. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977).

The fact that the parties have reached a settlement is relevant to the class-certification analysis. *See Smith v. Sprint Communs. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods. v. Windsor*, 521 U.S. 591, 618–20 (1997). "'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620). A court may not, however, "abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 849 (1999).

Here, Plaintiffs have met their burden of satisfying the Rule 23(a) and (b) requirements.

9

1.      **Rule 23(a)(1) Requirements**

a.      **Numerosity**

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the proposed Class consists of:

> All Persons who owned a Class Policy, where Class Policy means each LifeTrend 3 Policy and LifeTrend 4 Policy that was surrendered or lapsed on or after October 1, 2008 and before June 30, 2013, and which LifeTrend 3 Policy or LifeTrend 4 Policy was not included within the class in the Brady Class Settlement and its release.

Dkt. 200-1 at 4 (Proposed Settlement Agreement § 1.10).  Plaintiffs contend that this amounts to 4,508 insurance Policies held by approximately 3,666 policyholders.  Dkt. 201 at 9.  Courts in the Seventh Circuit have found that substantially smaller classes satisfy the numerosity requirement.  *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."); *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333, n.9 (7th Cir. 1969).  Because the proposed Class is so numerous that joinder of all members would be impracticable, Plaintiffs have satisfied the numerosity requirement.

b.      **Commonality**

To satisfy the commonality requirement, there must "be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity."  *Beaton v. SpeedyPC Software*, 907 F.3d

10

1018, 1026 (7th Cir. 2018) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015)).  Here, there are undoubtedly questions of law and fact that are common to the proposed Class.  Plaintiffs outline several common questions, including:

- Did Conseco Life breach the Policies' optional premium payment provisions?
- Did Conseco Life breach the Policies' COI provisions?
- Did Conseco Life breach the Policies' reporting and disclosure provisions?
- Did Conseco Life breach the Policies' guaranteed interest rate provisions?
- Did Conseco Life breach the Policies' non-participating provisions?

Dkt. 201 at 24–25.  Plaintiffs also contend that central questions in this case can be answered using common evidence, including:

- The terms of the Policies;
- The October 2008 form letters that Conseco Life sent to all LifeTrend policyholders;
- The form letters that Conseco Life sent a month later telling policyholders to disregard "all" prior notices;
- Evidence that almost no LifeTrend policyholders surrendered their Policies before October 2008;
- Evidence that approximately 34 percent of all LifeTrend policyholders surrendered their Policies after Conseco Life announced and implemented the changes first described in October 2008; and
- Evidence that Conseco Life intended to induce lapses and surrenders of Policies and hired an actuarial consultant to estimate the number and value of the lapsed and surrendered Policies.

*Id.*  Because Plaintiffs' claims involve common questions of law and fact, Plaintiffs have satisfied the commonality requirement.

### c.      Typicality

To satisfy the typicality requirement, "'the claims or defenses of the representative party [must] be typical of the claims or defenses of the class.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)).  "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'"  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Although 'the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'"  *Muro*, 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Plaintiffs have satisfied the typicality requirement because their claims are typical of those of the Class because they surrendered their substantially identical Policies after Conseco Life's class-wide breaches.

### d.      Adequacy of Representation

To satisfy the adequacy of representation requirement, the representative parties must "fairly and adequately protect the interests of the class."  *Amchem Prods.*, 521 U.S. at 625.  "This adequate representation inquiry consists of two

12

parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citing *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)).

Plaintiffs have satisfied the adequacy-of-representation requirement. Plaintiffs' claims are typical of those brought by other Class members, and their interests appear to be entirely consistent with those of the other Class members because they—like the other Class members—seek to maximize the Class's recovery from Conseco Life for the alleged breaches.  Both Plaintiffs have actively participated in this litigation by having testified at depositions, provided documents, reviewed pleadings, remained in regular contact with counsel, and kept apprised of the status of this litigation and settlement negotiations throughout the entire case.  Dkt. 200-2 at 3 (¶ 14).

Plaintiffs' counsel has also invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement.  *See* dkt. 200-2 at 2, 3, 5, 6 (Weisbrod Decl. ¶¶ 11, 13, 22–24, 27–28); dkt. 200-3 at 4 (DeLaney Decl. ¶¶ 18–19). Last, Plaintiffs' counsel has experience representing insurance policy holders, including in the mass litigation context, dkt. 200-2 at 1–2 (Weisbrod Decl. ¶ 6), and do not appear to have interests that conflict with those of the Class.

13

### 2.   Rule 23(b)(3) Requirements

Having determined that Plaintiffs' proposed Class satisfies all of Rule 23(a)'s requirements, the Court must evaluate whether it satisfies any one of the three requirements in Rule 23(b).  Certification of a class under Rule 23(b)(3) is proper if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This rule requires two findings: predominance of common questions over individual ones and superiority of the class action mechanism.  *Id.*  In assessing whether those requirements have been met, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*

Plaintiffs have shown that common questions of law and fact predominate.  Specifically, the core issues—the proper interpretation of the Policies, whether Conseco Life breached the Policies, the degree to which the policyholders were harmed, and whether Conseco Life was the alter ego of the CNO Defendants—are either identical for all Class members or (in the case of damages) can be determined by applying a simple formula to common evidence.  Dkt. 201 at 30.

14

Furthermore, Plaintiffs have shown that, for this case, a class action is vastly "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It will be the most efficient way to resolve Plaintiffs' claims, especially considering that Plaintiffs would have a difficult and costly task in seeking relatively small damages solely on an individual basis. Plaintiffs contend that using the damages methodology Plaintiffs have asserted throughout this litigation, approximately 1,120 of the Class Policies at issue give rise to damages (excluding prejudgment interest) of less than $1,000, and more than 2,600 give rise to damages of less than $10,000. Dkt. 200-4 at 8 (Browne Decl. ¶¶ 23–24). Accordingly, class resolution would be superior to other available methods of pursuing these claims.

The Court certifies the class for settlement purposes under Rule 23(b)(3).

## B.    Preliminary Appointment of Class Counsel

After a court certifies a Rule 23 class, the court is required to appoint class counsel to represent the class members. *See* Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;

Fed R. Civ. P. 23(g)(1)(A).

15

Plaintiffs are represented by Stephen A. Weisbrod, Shelli L. Calland, Derek Sugimura, Tamra B. Ferguson, and Saul Cohen from Weisbrod Matteis & Copley PLLC ("WMC"), and Kathleen DeLaney from DeLaney & DeLaney LLC. These attorneys have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' claims.

According to Plaintiffs, WMC is a national litigation firm that specializes in representing insurance policyholders, including in the mass litigation context.  Dkt. 200-2 at 1–2 (Weisbrod Decl. ¶ 6).  WMC has dedicated thousands of attorney hours and spent hundreds of thousands of dollars representing Plaintiffs in this case since its filing in 2012.  *Id.* at 2 (¶ 11).  WMC also worked, without compensation, on aspects of the *Brady* case.  *Id.* at 2–3. Before this case was transferred to this district, WMC obtained a reversal by the U.S. Court of Appeals for the Ninth Circuit of an order entered by the U.S. District Court for the Northern District of California dismissing the complaint. *Id.*  WMC has been named on the National Law Journal's Litigation Boutiques Hot List and has prevailed in litigation against insurance companies (and other parties) in trial courts and arbitral forums, appellate courts, and the U.S. Supreme Court.  *Id.* at 2 (¶ 7).  WMC has devoted the human and financial resources necessary to serve effectively as Class counsel (with the assistance of local counsel) and the Court expects it will continue to do so.  *Id.* at 3 (¶ 13).

Stephed Weisbrod, founding partner of WMC, graduated from the Harvard Law School and is admitted to practice law in the District of Columbia, Florida, Illinois and New York.  *Id.* at 1 (¶¶ 3–4).  He was also admitted *pro hac*

16

*vice* for this case.  *Id.* (¶ 3).  Before entering private practice of law, Mr. Weisbrod served as law clerk to Justice Alan B. Handler of the New Jersey Supreme Court and Chief Judge James B. Moran of the United States District Court for the Northern District of Illinois.  *Id.* (¶ 5).  He has tried more than 30 cases in seven states and the District of Columbia, representing clients in financial and commercial disputes, judgment enforcement and bankruptcy matters, and criminal cases.  *Id.* (¶ 8).

DeLaney & DeLaney is a civil litigation firm that handles various types of matters, including contract disputes, commercial disputes, and class action lawsuits.  Dkt. 200-3 at 1 (DeLaney Decl. ¶ 3).  DeLaney & DeLaney has served as local Class counsel and performed legal services on behalf of Plaintiffs since February 2, 2018.  *Id.* at 3 (¶ 11).  Kathleen DeLaney has been actively involved in the settlement process, including attending and participating in settlement conferences, negotiating the Proposed Settlement Agreement, and drafting and revising settlement related documents.  *Id.* (¶¶ 13–14).  DeLaney & DeLaney has devoted the human and financial services necessary to effectively serve as local Class counsel and the Court expects it will continue to do so.  *Id.* (¶ 12).

Kathleen DeLaney, managing partner of DeLaney & DeLaney, graduated from Indiana University Mauer School of Law, and is admitted to practice law in Indiana and Illinois.  *Id.* at 1, 2 (¶¶ 2, 4, 6).  Before entering private practice of law, Ms. DeLaney served as a law clerk for Judge David F. Hamilton, former United Stated District Judge for the Southern District of Indiana and current Judge for the Seventh Circuit Court of Appeals.  *Id.* at 2 (¶ 7).  Ms. DeLaney's

courtroom experience includes jury trials, bench trials, and appellate arguments in Indiana's state and federal courts, including the Seventh Circuit Court of Appeals.  *Id.* (¶ 10).

As such, the Court preliminarily appoints Stephen A. Weisbrod, Shelli L. Calland, Derek Sugimura, Tamra B. Ferguson, Saul Cohen, and Kathleen DeLaney as Class counsel.

### C.    Preliminary Settlement Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong*, 616 F.2d at 313 ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.").  Because the Proposed Settlement Agreement would bind all class members, the Court may approve the settlement only after finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, Federal Rule of Civil Procedure 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the proposal treats class members equitably relative to each other, and (4) the relief provided by the settlement is adequate.

Courts also consider the following five factors: (1) the strength of the plaintiffs' case compared against the amount of the defendants' settlement offer; (2) the complexity, length, and expense of continued litigation; (3) the

amount of opposition to the settlement; (4) the opinion of experienced counsel;

and (5) the stage of the proceedings and the amount of discovery completed.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir.

2006) (internal citation omitted).

### 1.   Adequacy of representation of the class

As explained above, Plaintiffs and Class Counsel have adequately

represented the Class.

### 2.   The Proposed Settlement Agreement was negotiated at arm's length

The Proposed Settlement Agreement was negotiated at arm's length.  As

explained in detail in Plaintiffs' Brief, the Proposed Settlement Agreement is the

product of years of litigation.  *See* dkt. 201 at 5–12.  Furthermore, the Proposed

Settlement Agreement was the result of three separate mediations with three

different mediators.  Dkt. 200-2 at 5 (Weisbrod Decl. ¶ 22); dkt. 200-3 at 4

(DeLaney Decl. ¶ 18).  Last, the consideration to be paid by Conseco Life is $27

million cash, and no unclaimed funds will revert to Conseco Life.  Dkt. 200-1 at

13, 14, 54 (Proposed Settlement Agreement §§ 1.59, 3.1).

### 3.   The Proposed Settlement Agreement treats class members equitably relative to each other

The Proposed Settlement Agreement treats Class members equitably

relative to each other.  Each Class member or the Class member's successor

will receive a pro rata share of the Class member's alleged damages based on

the net present value damages model that Plaintiffs have maintained is the

appropriate method for apportioning damages throughout this litigation, with

19

each recipient receiving a minimum of $500.  *See* dkt. 200-1 at 19 (Proposed

Settlement Agreement § 4.5).  The Settlement Agreement's distribution plan

ensures that the Settlement Administrator will make reasonable efforts to

locate Class Members and their successors and/or beneficiaries in order to

distribute their portions of the Settlement Fund in an Initial Distribution. *See*

*id.* at 18 (Proposed Settlement Agreement § 4.3).  Furthermore, after the

Settlement Administrator has done so, the Settlement Administrator will

disburse remaining Net Settlement Funds to the Class members and

successors who deposited their initial distributions. *See id.* at 18, 55 (Proposed

Settlement Agreement).  Only the small amount remaining in the custody of the

Settlement Administrator after that second distribution, if any, will be

distributed by the Settlement Administrator to a *cy pres* recipient approved by

this Court.  *See id.* at 18, 56 (Proposed Settlement Agreement).

> ### 4.    The relief provided by the Proposed Settlement Agreement is adequate

The $27 million in relief is adequate.  As stated above, each Class

member or recipient will receive a minimum $500.  Dkt. 200-1 at 19 (Proposed

Settlement Agreement § 4.5).  Depending on the value of the Policies they

surrendered, Class members will receive much more than $500—average per-

Policy relief exceeds $3,700, and the highest per-Policy payment amount is

more than $150,000.  *See id.* at 58 (Proposed Settlement Agreement).  In

addition, the *cy pres* relief will be used only for the small portion of the

Settlement Fund, if any, that remains unclaimed after multiple distributions to

Class members and/or to Opt-Outs.  *See id.* at 18, 56 (Proposed Settlement Agreement).

### 5.    The strength of Plaintiffs' case compared against the amount of Conseco Life's settlement offer

The most important settlement-approval factor is "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'"  *Synfuel Techs.*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)).  Here, continued litigation with Conseco Life presents significant risks and costs—the most obvious risk is that Plaintiffs will not be successful on their claims.  Furthermore, "[e]ven if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'"  *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (quoting *Reynolds*, 288 F.3d at 284).  Moreover, as explained above, the consideration to be paid by Conseco Life is $27 million cash, and no unclaimed funds will revert to Conseco Life.  *Id.* at 13, 14, 54 (Proposed Settlement Agreement §§ 1.59, 3.1).  Furthermore, each Class member or recipient will receive a minimum $500.  *Id.* at 19 (Proposed Settlement Agreement § 4.5).  Accordingly, the strength of Plaintiffs' case compared to Conseco Life's proposed settlement weighs in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement Agreement.

### 6.   The likely complexity, length, and expense of continued litigation

The likely complexity, length, and expense of trial weighs heavily in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement Agreement.  Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended.  Furthermore, given the case's procedural history, there is inherent risk in continuing to litigate this action.

### 7.   Opposition to the Proposed Settlement Agreement

Because the parties have not yet sent the notice, it is premature to assess this factor.

### 8.   The opinion of experienced counsel

The opinion of counsel weighs heavily in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement Agreement.  Courts are "'entitled to rely heavily on the opinion of competent counsel,'" *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325); *Isby*, 75 F.3d at 1200, and as explained above, counsel for the parties are experienced and highly competent.  Further, there is no indication that the Proposed Settlement Agreement is the victim of collusion.  *See Isby*, 75 F.3d at 1200.  Class counsel will be paid up to $9 million dollars, one-third of the Settlement Fund, and the total expenses will not exceed $1.25 million.  Dkt. 200-1 at 33 (Proposed Settlement Agreement §§ 9.1.1, 9.1.2).

9.   **The stage of the proceedings and the amount of discovery completed**

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325.  The claims presented and settlement demand have been developed over years of litigation and extensive mediation efforts.  Extensive discovery has been completed.  Dkt. 200-2 at 6 (Weisbrod Decl. ¶ 25).  While there is more discovery that could be done, *id.*, there is no indication that additional discovery would further assist the parties in reaching a settlement agreement that is fair to the Class.  Accordingly, this factor weighs in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement Agreement.

D.   **Class Notice**

Under Federal Rule of Civil Procedure Fed. R. Civ. P. 23(c)(2)(B), a notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Further, when presented with a proposed class settlement, a court "must direct notice in a reasonable manner to all class members who would be

bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." 3 Newberg on Class Actions § 8:32 (4th ed. 2010).

The proposed notice satisfies Rule 23's requirements and puts Class members on notice of the Proposed Settlement Agreement. The notice plan provides that notice will be sent to all Class members by first-class mail to last known addresses and by email, if known. Dkt. 200-1 at 20–21 (Proposed Settlement Agreement §§ 6.1–6.10). Notice will also be published on a website established by the Settlement Administrator and Class counsel. *Id.* at 21, 24 (Proposed Settlement Agreement §§ 6.2, 6.9). The Settlement Administrator will maintain a toll-free hotline to answer questions regarding the Proposed Settlement Agreement. *Id.* at 24 (Proposed Settlement Agreement § 6.10).

Moreover, the proposed notice is appropriate because it describes the terms of settlement, informs the Class about the allocations of attorney's fees and expenses, explains how Class members may opt-out of the Class and object to the settlement, and provides specific information regarding the date, time, and place of the fairness hearing. Dkt. 200-1 at 166–75. *See Air Lines Stewards & Stewardesses Assoc. v. Am. Airlines*, Inc., 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided

summary of proceedings to date, notified of significance of judicial

approval of settlement and informed of opportunity to object at hearing

satisfied due process).

### E.      Preliminary Appointment of Settlement Administrator

Plaintiffs request the preliminary appointment of Donlin Recano &

Company, Inc. to serve as Settlement Administrator.  Plaintiffs contend

that Donlin Recano is a company that specializes in claims

administration.  Dkt. 200-5 at 1 (Voorhies Decl. ¶ 1).  For over 30 years,

Donlin Recano has provided notice to millions of class members and has

administered billions of dollars in claims.  *See id.* at 2 (¶ 3).  Plaintiffs

have engaged Donlin Recano to conduct the notice and distribution

processes.  Dkt. 201 at 23.  Given the complexity and size of this case,

Donlin Recano's services in connection with implementing the notice

plan will be helpful.  Therefore, the Court preliminarily appoints Donlin

Recano as Settlement Administrator.

## IV.
## Conclusion

Plaintiffs' Motion for Preliminary Approval, Dkt. [200], and Defendants'

motion for joinder, dkt. [204], are **GRANTED**.

Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), Plaintiffs have

shown that the Court will likely be able to (i) approve the Proposed Settlement

Agreement under Rule 23(e)(2); and (ii) certify the Class for purposes of the

Proposed Settlement Agreement only.

The Court finds that it will likely be able to approve the Proposed Settlement Agreement as fair, reasonable, and adequate, subject to the right of any Class Member to challenge the Proposed Settlement Agreement at a hearing after notice has been disseminated to the class.

The Court finds that it will likely be able to hold that the proposed settlement consideration and class relief are fair, reasonable, adequate, and equitable for purposes of the Proposed Settlement Agreement, to approve the Release provided to Conseco Life and the Released Parties, and to approve the basis for Class Counsel's calculation of the Initial Distribution, Total Alleged Policy NPV Damages, and Alleged Policy NPV Damages.

The Court preliminarily appoints Donlin Recano & Company, Inc. to serve as Settlement Administrator.  The Court also finds that it will likely be able to approve Donlin Recano to serve as Settlement Administrator after final approval and that it will likely be able to approve the Claim Process.  Donlin Recano will be responsible for disseminating Class Notice in the form set forth in Exhibit 4 to the Proposed Settlement Agreement and for undertaking all Settlement Administrator duties contemplated by the Proposed Settlement Agreement prior to the Court's grant or denial of final approval of the Proposed Settlement Agreement.

The Court preliminarily certifies the proposed Class, designates Plaintiffs William Jeffrey Burnett and Joe H. Camp as Settlement Class Representatives, and appoints the following attorneys as Class Counsel: Stephen A. Weisbrod,

Shelli L. Calland, Derek Sugimura, Tamra B. Ferguson, Saul Cohen, Kathleen DeLaney.

The preliminary certification of the proposed Class, the preliminary designation of class representatives, and the preliminary designation of Class Counsel established by this Order shall be automatically vacated if the Proposed Settlement Agreement is terminated or is disapproved by the Court, any appellate court and/or any other court of review, or if any of the Settling Parties successfully invokes its right to terminate the Proposed Settlement Agreement, in which event the Proposed Settlement Agreement and the fact that it was entered into shall not be offered by the Settling Parties or construed as an admission or as evidence for any purpose, including the "certifiability" of any class.

The Court determines that distribution of the Class Notice to be given as set forth in the Class Notice Plan is reasonable and the best practicable notice under the circumstances; satisfies Rule 23(h) of the Federal Rules of Civil Procedure; is reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the Proposed Settlement Agreement, their right to object to and opt-out of the Proposed Settlement Agreement, the effect of the Proposed Settlement Agreement (including the releases to be provided thereunder), Class Counsel's request for attorneys' fees, reimbursement of litigation expenses and Settlement Administration Expenses, and the requested service awards for Plaintiffs; constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and meets the requirements of due

process, the Federal Rules of Civil Procedure, and the United States Constitution.

The Court preliminarily finds that with an agreement between Plaintiffs and Conseco Life it will likely be able to certify and approve a settlement class under Federal Rule of Civil Procedure 23.

The Court preliminarily approves the Proposed Settlement Agreement as sufficiently fair and reasonable to warrant sending notice to the Class preliminarily certified for settlement purposes and hereby directs Plaintiffs and Donlin Recano to give notice to the class as set forth in the Proposed Settlement Agreement.

Plaintiffs shall file proof by affidavit of the distribution of the Class Notice at or before the Fairness Hearing.

Any attorneys hired by individual members of the Class for the purpose of objecting to the Proposed Settlement Agreement shall file with the Clerk of the Court and serve on Class Counsel and Conseco Life's counsel a notice of appearance prior to the Fairness Hearing.

Class members who object to the settlement must follow the procedure as outlined in the Proposed Settlement Agreement § 7.5. Unless otherwise ordered by the Court, Class members who do not timely make their objections as provided by the will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the Proposed Settlement Agreement, as outlined in the Proposed Settlement Agreement § 7.5.

Class members who wish to exclude themselves must follow the procedure as outlined in the Proposed Settlement Agreement §§ 7.1, 7.2.  Class members who do not file timely written requests for exclusion in accordance with the Proposed Settlement Agreement shall be bound by all subsequent proceedings, orders, and judgments in this action, as outlined in the Proposed Settlement Agreement § 7.4.

Class Counsel and Conseco Life's counsel shall promptly furnish each other with copies of any and all objections and requests for exclusion that come into their possession.

Any objector requesting access to confidential materials must first obtain leave of court and agree to be bound by an agreed confidentiality order issued by the Court, which shall provide for the same confidentiality obligations that applied to the parties during the litigation and as provided by the Proposed Settlement Agreement.

The Court hereby limits discovery as to Conseco Life, Wilton Re (as defined in the Proposed Settlement Agreement), and their current employees except within the parameters of the Proposed Settlement Agreement § 8.13 as needed in connection with the prosecution of Claims in the action against the CNO Defendants and after first seeking any requested information from the CNO Defendants.

The Court hereby adopts the following settlement procedure:

| Event | Date |
|---|---|
| Mailing of Class Notice | 30 days after entry of this Order |
| Motion for Final Approval | 60 days after entry of this Order |
| Deadline for requests for exclusion from the class | 28 days before the Fairness Hearing |
| Deadline for objections | 28 days before the Fairness Hearing |
| Reply in Support of Motion for Final Approval | 7 days before the Fairness Hearing |
| Fairness Hearing | December 3, 2020 at 1:30 p.m. |

A Fairness Hearing will be held hearing on **December 3, 2020 at 1:30 p.m.** in Room 246, United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana.

**SO ORDERED.**

Date: 7/22/2020

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

John M. Aerni
ALSTON AND BIRD LLP
john.aerni@alston.com

Kelly S Biggins
Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

James H Bilton
LOCKE LORD LLP
jbilton@lockelord.com

Taylor F. Brinkman
LOCKE LORD LLP
tbrinkman@lockelord.com

Shelli L. Calland
WEISBROD MATTEIS & COPLEY PLLC
scalland@wmclaw.com

Saul Cohen
WEISBROD MATTEIS & COPLEY PLLC
scohen@wmclaw.com

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Tamra B. Ferguson
WEISBROD MATTEIS & COPLEY PLLC
tferguson@wmclaw.com

Steven K. Huffer
S.K. HUFFER & ASSOCIATES, P.C.
steveh@hufferlaw.com

Adam J. Kaiser
ALSTON & BIRD LLP
adam.kaiser@alston.com

Raoul D Kennedy
Skadden Arps Slate Meagher and Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111-4144

Barbara Louise Lyons
Law Office of Barbara L Llyons
80 El Camino Real Apt D
Burlingame, CA 94010

Rachel Adi Naor
Alston and Bird LLP
rachel.naor@alston.com

Matthew B Nazareth
Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Jaeyeon Park
Alston and Bird LLP
90 Park Avenue
New York, NY 10016

Samuel J Park
Alston and Bird LLP
samuel.park@alston.com

Phillip Russell Perdew
LOCKE LORD LLP
pperdew@lockelord.com

Jonathan M Rotter
Glancy Prongay and Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

Carl C Scherz
LOCKE LORD LLP
cscherz@lockelord.com

Neesa Sethi
Weisbrod Matteis and Copley PLLC
1900 M Street NW, Suite 850
Washington, DC 20036

T. Esther Silberstein
WEISBROD MATTEIS & COPLEY PLLC
esilberstein@wmclaw.com

Derek Y. Sugimura
WEISBROD MATTEIS & COPLEY PLLC
dsugimura@wmclaw.com

Stephen A Weisbrod
WEISBROD MATTEIS & COPLEY PLLC
sweisbrod@wmclaw.com