UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM JEFFREY BURNETT,<br>JOE H CAMP, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   No. 1:18-cv-00200-JPH-DML |
| | ) |
| CONSECO LIFE INSURANCE COMPANY<br>n/k/a Wilco Life Ins. Co,<br>CNO FINANCIAL GROUP, INC.,<br>CNO SERVICES LLC, | )<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING MOTION FOR FINAL CLASS APPROVAL**

Plaintiffs William Jeffrey Burnett and Joe H. Camp—former holders of "LifeTrend" life insurance policies ("Policies")—allege that Defendants breached their Policies by announcing and implementing changes in the calculation of Policy premiums and expense charges that caused thousands of policyholders to surrender their Policies.  Plaintiffs have filed a motion for final approval of the class action settlement.  Dkt. 214.  They seek (1) final approval of the Settlement Agreement with only Defendant Conseco Life Insurance Company ("Conseco Life"); (2) certification of the settlement class of Conseco Life policyholders; (3) Plaintiffs' designation as class representatives; (4) appointment of attorneys from Weisbrod Matteis & Copley PLLC and DeLaney & DeLaney LLC as class counsel; (5) appointment of Donlin Recano & Company, Inc. as settlement administrator; (6) approval of the notice of settlement; and (7) approval of the Settlement Agreement's plan of distribution.

1

*Id.* at 1.  Conseco Life has filed a response in support of settlement approval. Dkt. 220.  For the reasons below, Plaintiffs' motion for final approval is **GRANTED**.  Dkt. [214].

## I.
## Facts and Procedural History

On October 5, 2012, Plaintiffs filed their original complaint in the Central District of California against Defendants Conseco Life, CNO Financial Group, Inc., and CNO Services, LLC.  Dkt. 1.  They allege that Conseco Life announced that individual LifeTrend policyholders could no longer maintain their Policies without paying substantial new premiums and charges as part of a "shock lapse" strategy designed to induce policyholders to give up their Policies.

In November 2012, the Judicial Panel on Multidistrict Litigation ("MDL Panel") conditionally transferred the case to the Northern District of California (No. 10-md-02124; the "LifeTrend MDL").  Dkt. 26.  The LifeTrend MDL encompassed several lawsuits brought by several different plaintiffs.  One of the cases, *Brady v. Conseco Life Insurance Co.*, No. 08-cv-5746 (N.D. Cal.), was filed on behalf of almost all LifeTrend policyholders—including policyholders who had retained their policies as well as policyholders who had surrendered their policies.

In December 2011, the MDL Court held that former policyholders no longer could be included in the Brady Rule 23(b)(2) class because former policyholders had no standing to seek declaratory or injunctive relief, and because the damages they sought were not incidental to injunctive relief.  *See*

*In re Conseco*, No. C 10-02124 SI, 2011 WL 6372412, at *5-6 (N.D. Cal. Dec. 20, 2011).  Former policyholders were thereafter removed from the Brady class.

In November 2013, the MDL Court approved the Brady settlement and certified two settlement classes—a Rule 23(b)(1) and (2) class of "In Force Policyholders" and a Rule 23(b)(3) class of "Lapsed Policyholders."  *See In re Conseco*, No. 3:10-MD-02124-SI, 2013 WL 10349975, at *1 (N.D. Cal. Nov. 8, 2013).  The Brady Lapsed Policyholders class included approximately 190 former policyholders whose Policies had "lapsed."

In April 2015, the MDL Court granted Defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  *LifeTrend MDL*, dkt. 717.  The MDL Court also dismissed the *Burnett* Plaintiffs' claims against the CNO Defendants because those claims derived from the *Burnett* Plaintiffs' claims against Conseco Life.  *Id.*

In May 2017, the Ninth Circuit reversed the MDL Court's dismissal of the complaint and remanded this case to the MDL Court.  *See LifeTrend MDL*, dkt. 728.  In September 2017, the Northern District of California remanded the case back to the Central District of California.  Dkt. 29; dkt. 30.  In January 2018, this case was transferred to this district.  Dkt. 69; dkt. 70.  In April 2018, Defendants moved to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted. Dkt. 107; dkt. 110.  In September 2019, Plaintiffs moved for class certification, dkt. 162, and subsequently, on March

20, 2020, the Court granted Conseco Life's request to withdraw its motion to dismiss and Plaintiffs' motion for class certification, *see* dkt. 197.

On April 10, 2020, Plaintiffs filed a motion for preliminary approval of class action settlement.[1]  Dkt. 200.  The Court granted preliminary approval on July 22, 2020 and scheduled a fairness hearing under Federal Rule of Civil Procedure 23(e)(2) for December 3, 2020.  Dkt. 206.  On September 21, 2020, Plaintiffs moved for final approval.  Dkt. 214.  Conseco Life has filed a response in support.  Dkt. 220.  The Court held the fairness hearing on December 3, 2020.  Dkt. 229.

The proposed class plaintiffs are William Jeffrey Burnett and Joe H. Camp.  Dkt. 200-1 at 11 (Settlement Agreement § 1.45).  The proposed class (the "Class") includes:

> [A]ll Persons who owned a LifeTrend 3 Policy or LifeTrend 4 Policy that was surrendered or lapsed on or after October 1, 2008 and before June 30, 2013. However, the Class does not include LifeTrend 3 Policies or LifeTrend 4 Policies included in the class action settlement in a separate lawsuit known as Brady v. Conseco Life Insurance Company, Inc., et al., No. 3:08-CV-5746 (N.D. Cal.).
>
> Notwithstanding the foregoing, the following Persons shall be excluded from the Class and shall not constitute Class Members: (1) all Persons who make a timely election to be excluded from the proposed Class as approved by the Court in the Final Approval Order; (2) governmental entities; (3) the judge(s) to whom this case is assigned and any immediate family members

---

[1] This order incorporates the defined terms set forth in the Settlement Agreement, dkt. 200-1.

thereof; and (4) Conseco Life, Wilton Re, the Wilco Life
Affiliates, the Wilco Life Agents, the CNO Defendants,
the CNO Affiliates, and the CNO Agents.

*See id.* at 4–7, 186.

The Court has carefully reviewed the 53-page Proposed Settlement
Agreement that would resolve Plaintiffs' claims against Conseco Life.  Dkt. 200-
1.  Some of the critical provisions are:

- The CNO Defendants are not parties to or beneficiaries of the
  agreement, and nothing in the agreement shall impair any rights of
  Plaintiffs to prosecute Claims in this Action or otherwise against the
  CNO Financial Group, Inc. and CNO Services LLC.  *Id.* at 3 (Settlement
  Agreement).

- Conseco Life will pay $27 million in cash to settle the claims of the
  Class (the "Settlement Fund").  *Id.* at 13, 14 (Settlement Agreement §§
  1.59, 3.1).

- No Class member will receive less than $500.  *Id.* at 19 (Settlement
  Agreement § 4.5).

- The amount distributed to the Class will be reduced by the proportional
  pro rata share of the Settlement Fund attributable to any Opt-Outs.  *Id.*
  at 19 (Settlement Agreement § 4.5).

- No portion of the Settlement Fund will revert to Conseco Life.  *Id.* at 54
  (Settlement Agreement).

- Notices will be mailed to Class members within 30 days after the Court
  grants Plaintiffs' motion for preliminary class approval.  *Id.* at 21–22
  (Settlement Agreement § 6.6).

- Conseco Life reserves the right to withdraw from the Proposed
  Settlement Agreement if the number of Class Policies requested to be
  excluded from the Class by opt-out is more than 150.  *Id.* at 44
  (Settlement Agreement § 12.5.3).

- Class members may opt-out of the Class by serving written requests for exclusion up to 28 days before the Fairness Hearing. *Id.* at 24 (Settlement Agreement § 7.1).

- Class members may object to the Proposed Settlement Agreement by filing and serving written objections up to 28 days before the Fairness Hearing.[2] *Id.* at 25 (Settlement Agreement § 7.5).

- The Settlement Administrator will distribute the Net Settlement Fund in two distributions. *Id.* at 54 (Settlement Agreement).

- Any portion of the Net Settlement Fund that remains unclaimed after the Second Distribution, as well as any funds that are not distributed to Opt-Outs in satisfaction of individual settlements or judgments, will be used to fund a *cy pres* award to the National Consumer Law Center, or alternatively to another recipient designated by the Court. *Id.* at 56, 57 (Settlement Agreement §§ 7, 4, 6).

- Once the settlement becomes final and Conseco Life funds the Settlement Fund, Plaintiffs and Class members will release any and all claims against Conseco Life (and certain related individuals and entities) based on the LifeTrend Policies. *See id.* at 26–33 (Settlement Agreement).

- No attorneys' fees, expenses, or Class representative awards will be distributed out of the Settlement Fund without the Court's approval, and the total expenses to be withdrawn from the Settlement Fund will not exceed $1.25 million. *Id.* at 33 (Settlement Agreement § 9.1.2).

- Plaintiffs may seek a reasonable portion of the settlement fund to be set aside for litigation costs, attorneys' fees, and Class representative incentive awards. *See id.* at 33–35 (Settlement Agreement).

As the Court confirmed at the December 3, 2020 fairness hearing, no class members have filed objections or opted out. Dkt. 226; dkt. 229.

---

[2] This refers to the final hearing under Federal Rule of Civil Procedure 23(e)(2) to assess the fairness, reasonableness, and adequacy of the Agreement. Dkt. 200-1 at 7 (Settlement Agreement § 1.26).

## II.
## Applicable Law

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1987) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832 (1999) ("In drafting Rule 23(b), the Advisory Committee sought to catalogue in functional terms those recurrent life patterns which call for mass litigation through representative parties."). Any settlement that results in the dismissal of a class action requires court approval. *See* Fed. R. Civ. P. 23(e); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002).

After preliminary review and a hearing, a "district court may approve a settlement of a class action if it concludes that it 'is fair, reasonable, and adequate.'" *Kaufman v. Am. Express Travel*, 877 F.3d 276, 283 (7th Cir. 2017) (quoting Fed. R. Civ. P. 23(e)(2)). Approval requires "the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Id.* "Indeed . . . district courts should act as the 'fiduciary of the class,' subject to the high duty of care that the law requires of fiduciaries." *Id.*

## III.
## Analysis

### A. Class Certification

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate,'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008), and "provides a one-size-fits-all formula for

deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010).  "A class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains . . . indispensable.'"  *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Tel.*, 457 U.S. at 160-61); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003).

A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and any one subsection of Rule 23(b).  *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Arreola*, 546 F.3d at 794.  In addition to those requirements, the class must meet two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity of class members by reference to objective criteria; and (2) that the named representative be a member of the proposed class.  *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977).

The fact that the parties have reached a settlement is relevant to the class-certification analysis.  *See Smith v. Sprint Comms. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods. v. Windsor*, 521 U.S. 591, 618–20 (1997).  "'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'"  *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620).  A court may not,

however, "abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." *Ortiz*, 527 U.S. at 849.

Here, Plaintiffs have met their burden of satisfying the Rule 23(a) and (b) requirements.

### 1. Rule 23(a)(1) Requirements

#### a. Numerosity

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed Class consists of:

> All Persons who owned a Class Policy, where Class Policy means each LifeTrend 3 Policy and LifeTrend 4 Policy that was surrendered or lapsed on or after October 1, 2008 and before June 30, 2013, and which LifeTrend 3 Policy or LifeTrend 4 Policy was not included within the class in the Brady Class Settlement and its release.

*See* dkt. 200-1 at 4–7, 186. Plaintiffs contend that this amounts to 4,508 insurance Policies held by approximately 3,666 policyholders. Dkt. 201 at 9. Courts in the Seventh Circuit have found that substantially smaller classes satisfy the numerosity requirement. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017) ("While there is no magic number that

applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."); *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333, n.9 (7th Cir. 1969).  Because the proposed Class is so numerous that joinder of all members would be impracticable, Plaintiffs have satisfied the numerosity requirement.

### b. Commonality

To satisfy the commonality requirement, there must "be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity."  *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015)).  Here, there are undoubtedly questions of law and fact common to the proposed Class.  Plaintiffs outline several common questions, including:

- Did Conseco Life breach the Policies' optional premium payment provisions?
- Did Conseco Life breach the Policies' COI provisions?
- Did Conseco Life breach the Policies' reporting and disclosure provisions?
- Did Conseco Life breach the Policies' guaranteed interest rate provisions?
- Did Conseco Life breach the Policies' non-participating provisions?

Dkt. 201 at 24–25.  Plaintiffs also contend that central questions in this case can be answered using common evidence, including:

- The terms of the Policies;
- The October 2008 form letters that Conseco Life sent to all LifeTrend policyholders;
- The form letters that Conseco Life sent a month later telling policyholders to disregard "all" prior notices;

10

- Evidence that almost no LifeTrend policyholders surrendered their Policies before October 2008;
- Evidence that approximately 34 percent of all LifeTrend policyholders surrendered their Policies after Conseco Life announced and implemented the changes first described in October 2008; and
- Evidence that Conseco Life intended to induce lapses and surrenders of Policies and hired an actuarial consultant to estimate the number and value of the lapsed and surrendered Policies.

*Id.* Because Plaintiffs' claims involve common questions of law and fact, Plaintiffs have satisfied the commonality requirement.

### c. Typicality

To satisfy the typicality requirement, "'the claims or defenses of the representative party [must] be typical of the claims or defenses of the class.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Although 'the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro*, 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

11

Plaintiffs have satisfied the typicality requirement because their claims are typical of those of the Class because they surrendered their substantially identical Policies after Conseco Life's class-wide breaches.

### d. Adequacy of Representation

To satisfy the adequacy of representation requirement, the representative parties must "fairly and adequately protect the interests of the class." *Amchem Prods.*, 521 U.S. at 625. "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citing *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)).

Plaintiffs have satisfied the adequacy-of-representation requirement. Plaintiffs' claims are typical of those brought by other Class members, and their interests appear to be entirely consistent with those of the other Class members because they—like the other Class members—seek to maximize the Class's recovery from Conseco Life for the alleged breaches. Both Plaintiffs have actively participated in this litigation by having testified at depositions, provided documents, reviewed pleadings, remained in regular contact with counsel, and kept apprised of the status of this litigation and settlement negotiations throughout the entire case. Dkt. 200-2 at 3 (¶ 14).

Plaintiffs' counsel has also invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law,

12

and negotiating a detailed settlement. *See* dkt. 200-2 at 2, 3, 5, 6 (Weisbrod Decl. ¶¶ 11, 13, 22–24, 27–28); dkt. 200-3 at 4 (DeLaney Decl. ¶¶ 18–19). Last, Plaintiffs' counsel have experience representing insurance policy holders, including in the mass litigation context, dkt. 200-2 at 1–2 (Weisbrod Decl. ¶ 6), and do not appear to have interests that conflict with those of the Class.

### 2. Rule 23(b)(3) Requirements

Having determined that Plaintiffs' proposed Class satisfies all of Rule 23(a)'s requirements, the Court must evaluate whether it satisfies any one of the three requirements in Rule 23(b). As the Court addressed in its preliminary class approval order, dkt. 206 at 14–15, certification of a class under Rule 23(b)(3) is proper if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This rule requires two findings: predominance of common questions over individual ones and superiority of the class action mechanism. *Id.* In assessing whether those requirements have been met, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.*

Plaintiffs have shown that common questions of law and fact predominate. Specifically, the core issues—the proper interpretation of the Policies, whether Conseco Life breached the Policies, the degree to which the policyholders were harmed, and whether Conseco Life was the alter ego of the CNO Defendants—are either identical for all Class members or (in the case of damages) can be determined by applying a simple formula to common evidence. Dkt. 201 at 30.

Furthermore, Plaintiffs have shown that, for this case, a class action is vastly "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It will be the most efficient way to resolve Plaintiffs' claims, especially considering that Plaintiffs would have a difficult and costly task in seeking relatively small damages solely on an individual basis. Plaintiffs contend that using the damages methodology they've asserted throughout this litigation, approximately 1,120 of the Class Policies at issue give rise to damages (excluding prejudgment interest) of less than $1,000, and more than 2,600 give rise to damages of less than $10,000. Dkt. 200-4 at 8 (Browne Decl. ¶¶ 23–24). Accordingly, class resolution would be superior to other available methods of pursuing these claims.

The Court grants final certification of the class for settlement purposes under Rule 23(b)(3).

**B. Appointment of Class Counsel**

After a court certifies a Rule 23 class, the court is required to appoint

class counsel to represent the class members.  *See* Fed. R. Civ. P. 23(g)(1).  In

appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or
> investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other
> complex litigation, and the types of claims asserted in
> the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to
> representing the class.

Fed R. Civ. P. 23(g)(1)(A).

Plaintiffs are represented by Stephen A. Weisbrod, Shelli L. Calland,

Derek Sugimura, Tamra B. Ferguson, and Saul Cohen from Weisbrod Matteis

& Copley PLLC ("WMC"), and Kathleen DeLaney from DeLaney & DeLaney LLC.

These attorneys have done substantial work identifying, investigating,

prosecuting, and settling Plaintiffs' claims.

According to Plaintiffs, WMC is a national litigation firm that specializes

in representing insurance policyholders, including in the mass litigation

context.  Dkt. 200-2 at 1–2 (Weisbrod Decl. ¶ 6).  WMC has dedicated

thousands of attorney hours and spent hundreds of thousands of dollars

representing Plaintiffs in this case since its filing in 2012.  *Id.* at 2 (¶ 11).  WMC

also worked, without compensation, on aspects of the *Brady* case.  *Id.* at 2–3.

Before this case was transferred to this district, WMC obtained a reversal by

the U.S. Court of Appeals for the Ninth Circuit of an order entered by the U.S.

15

District Court for the Northern District of California dismissing the complaint.
*Id.*  WMC has been named on the National Law Journal's Litigation Boutiques
Hot List and has prevailed in litigation against insurance companies (and other
parties) in trial courts and arbitral forums, appellate courts, and the U.S.
Supreme Court.  *Id.* at 2 (¶ 7).  WMC has devoted the human and financial
resources necessary to serve effectively as Class counsel (with the assistance of
local counsel).  *Id.* at 3 (¶ 13).

Stephen Weisbrod, founding partner of WMC, graduated from Harvard
Law School and is admitted to practice law in the District of Columbia, Florida,
Illinois, and New York.  *Id.* at 1 (¶¶ 3–4).  He was also admitted *pro hac vice* for
this case.  *Id.* (¶ 3).  Before entering private practice of law, Mr. Weisbrod
served as law clerk to Justice Alan B. Handler of the New Jersey Supreme
Court and Chief Judge James B. Moran of the United States District Court for
the Northern District of Illinois.  *Id.* (¶ 5).  He has tried more than 30 cases in
seven states and the District of Columbia, representing clients in financial and
commercial disputes, judgment enforcement and bankruptcy matters, and
criminal cases.  *Id.* (¶ 8).

DeLaney & DeLaney is a civil litigation firm that handles various types of
matters, including contract disputes, commercial disputes, and class action
lawsuits.  Dkt. 200-3 at 1 (DeLaney Decl. ¶ 3).  DeLaney & DeLaney has served
as local Class counsel and performed legal services on behalf of Plaintiffs since
February 2, 2018.  *Id.* at 3 (¶ 11).  Kathleen DeLaney has been actively involved
in the settlement process, including attending and participating in settlement

16

conferences, negotiating the Settlement Agreement, and drafting and revising settlement related documents. *Id.* (¶¶ 13–14). DeLaney & DeLaney has devoted the human and financial services necessary to effectively serve as local Class counsel and the Court expects it will continue to do so. *Id.* (¶ 12).

Kathleen DeLaney, managing partner of DeLaney & DeLaney, graduated from Indiana University Mauer School of Law, and is admitted to practice law in Indiana and Illinois. *Id.* at 1, 2 (¶¶ 2, 4, 6). Before entering private practice of law, Ms. DeLaney served as a law clerk for Judge David F. Hamilton, former United States District Judge for the Southern District of Indiana and current Judge for the Seventh Circuit Court of Appeals. *Id.* at 2 (¶ 7). Ms. DeLaney's courtroom experience includes jury trials, bench trials, and appellate arguments in Indiana's state and federal courts, including the Seventh Circuit Court of Appeals. *Id.* (¶ 10).

Finding that Plaintiffs' counsel satisfy the criteria set forth in Fed R. Civ. P. 23(g)(1)(A), the Court appoints Stephen A. Weisbrod, Shelli L. Calland, Derek Sugimura, Tamra B. Ferguson, Saul Cohen, and Kathleen DeLaney as Class counsel.

### C. Final Settlement Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong*, 616 F.2d at 313 ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). Because the

17

Settlement Agreement would bind all class members, the Court may approve the settlement only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making this determination, Federal Rule of Civil Procedure 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the proposal treats class members equitably relative to each other, and (4) the relief provided by the settlement is adequate.

Courts also consider the following five factors: (1) the strength of the plaintiffs' case compared to the amount of the defendants' settlement offer; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the opinion of experienced counsel; and (5) the stage of the proceedings and the amount of discovery completed.  *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

### 1. Adequacy of representation of the class

As explained above at pages 12–13, Plaintiffs and Class Counsel have adequately represented the Class.

### 2. The Settlement Agreement was negotiated at arm's length

The Settlement Agreement was negotiated at arm's length.  As Plaintiffs explained in detail, the Settlement Agreement is the product of years of litigation.  *See* dkt. 201 at 5–12.  Furthermore, the Settlement Agreement was the result of three separate mediations with three different mediators.  Dkt. 200-2 at 5 (Weisbrod Decl. ¶ 22); dkt. 200-3 at 4 (DeLaney Decl. ¶ 18).  Last,

18

the consideration to be paid by Conseco Life is $27 million cash, and no unclaimed funds will revert to Conseco Life.  Dkt. 200-1 at 13, 14, 54 (Settlement Agreement §§ 1.59, 3.1).

### 3. The Settlement Agreement treats class members equitably relative to each other

The Settlement Agreement treats Class members equitably relative to each other.  Each Class member or the Class member's successor will receive a pro rata share of the Class member's alleged damages based on the net present value damages model that Plaintiffs have maintained is the appropriate method for apportioning damages throughout this litigation, with each recipient receiving a minimum of $500.  *See* dkt. 200-1 at 19 (Settlement Agreement § 4.5).  The Settlement Agreement's distribution plan ensures reasonable efforts to locate Class Members and their successors and/or beneficiaries in order to distribute their portions of the Settlement Fund in an Initial Distribution.  *See id.* at 18 (Settlement Agreement § 4.3).  Furthermore, after those efforts are complete, the Settlement Administrator will disburse remaining Net Settlement Funds to the Class members and successors who deposited their initial distributions.  *See id.* at 18, 55.  Only the small amount remaining in the custody of the Settlement Administrator after that second distribution, if any, will be distributed by the Settlement Administrator to a *cy pres* recipient approved by this Court.  *See id.* at 18, 56.

### 4. The relief provided by the Settlement Agreement is adequate

The $27 million in relief is adequate.  As stated above, each Class member or recipient will receive a minimum of $500.  Dkt. 200-1 at 19 (Settlement Agreement § 4.5).  Depending on the value of the Policies they surrendered, many Class members will receive much more than $500—average per-Policy relief exceeds $3,700, and the highest per-Policy payment amount is more than $150,000.  *See id.* at 58.  In addition, *cy pres* relief will be used only for the small portion of the Settlement Fund, if any, that remains unclaimed after multiple distributions to Class members.  *See id.* at 18, 56.

Moreover, if this case were to be tried, no relief would be guaranteed. *See Kaufman*, 877 F.3d at 284–85.  And the costs and expenses would be higher.  The Settlement Agreement contemplates $9 million in attorney fees and Counsel contemplate $577,662.29 so far in expense reimbursements from the $27 million settlement fund, with any further expenses being much smaller.  Dkt. 202; dkt. 216; *see* dkt. 229.  Those fees and expenses are reasonable given the portion of the settlement fund that they represent and the extensive litigation that this case has required over several years.  *See Kaufman*, 877 F.3d at 287–88; dkt. 203 (collecting authority).  Class counsel have taken substantial risks in this litigation and have been successful at key points in this case, including litigating an appeal and motions to dismiss, and in negotiating this Settlement Agreement.  *See* dkt. 203 at 11–12.

Finally, as explained below, class members have received adequate notice and the proposed method of distribution relief is effective in providing prompt payment.

### 5. The strength of Plaintiffs' case compared against the amount of Conseco Life's settlement offer

The most important settlement-approval factor is "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Techs.*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)).  Here, continued litigation with Conseco Life presents significant risks and costs—the most obvious risk is that Plaintiffs will not be successful on their claims. Furthermore, "[e]ven if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory.  Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (quoting *Reynolds*, 288 F.3d at 284).  Moreover, as explained above, the consideration to be paid by Conseco Life is $27 million cash, and no unclaimed funds will revert to Conseco Life.  Dkt. 200-1 at 13, 14, 54 (Settlement Agreement §§ 1.59, 3.1).  Furthermore, each Class member or recipient will receive a minimum of $500.  *Id.* at 19 (Settlement Agreement § 4.5).  Accordingly, the strength of Plaintiffs' case compared to the settlement weighs in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement.

### 6. The likely complexity, length, and expense of continued litigation

The likely complexity, length, and expense of trial weigh heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement. Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended. Furthermore, as explained above at page 20, given the case's procedural history, there is inherent risk in continuing to litigate this action.

### 7. Opposition to the Settlement Agreement

As confirmed at the fairness hearing, there are no objections to or opt-outs from the Settlement Agreement. Dkt. 226; dkt. 229.

### 8. The opinion of experienced counsel

The opinion of counsel weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement. Courts are "'entitled to rely heavily on the opinion of competent counsel,'" *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325); *Isby*, 75 F.3d at 1200; and as explained above, counsel for the parties are experienced and highly competent. Further, there is no indication that the Settlement Agreement "is tainted by collusion." *Isby*, 75 F.3d at 1200. Class counsel will be paid up to $9 million dollars, one-third of the Settlement Fund, and the total expenses will not exceed $1.25 million. Dkt. 200-1 at 33 (Settlement Agreement §§ 9.1.1, 9.1.2).

### 9. The stage of the proceedings and the amount of discovery completed

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325. The claims presented and settlement demand have been developed over years of litigation and extensive mediation efforts. Extensive discovery has been completed. Dkt. 200-2 at 6 (Weisbrod Decl. ¶ 25). While more discovery could be done, *id.*, there is no indication that additional discovery would further assist the parties in reaching a settlement agreement that is fair to the Class. Accordingly, this factor weighs in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement.

### D. Class Notice

Under Federal Rule of Civil Procedure 23(c)(2)(B), a notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

When presented with a proposed class settlement, a court "must direct notice in a reasonable manner to all class members who would be bound by the

proposal." Fed. R. Civ. P. 23(e)(1).  "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing."  3 Newberg on Class Actions § 8:32 (4th ed. 2010).

The notice given here satisfies Rule 23's requirements and placed Class members on notice of the Settlement Agreement.  As contemplated in the Court's preliminary approval order, notice was sent by First Class United States Mail.  *See* dkt. 214-1 at 2, 5.  4,508 Notice Packages were mailed, with only 197 returned undeliverable.  Dkt. 214-1 at 5.  The Settlement Administrator maintained a website with the notice information, as well as an email address and a toll-free hotline to answer questions about the Settlement Agreement.  *Id.*  Also as the preliminary approval order contemplated, the notice described the terms of settlement, informed the Class about the allocations of attorney's fees and expenses, explained how Class members may opt-out of the Class and object to the settlement, and provided specific information about the fairness hearing.  *See* dkt. 206 at 24; dkt. 200-1 at 166–75.

As of September 21, 2020, the Settlement Administrator had received over 1,200 completed W-9 forms in response.  Dkt. 214-1 at 6.  And as of November 24, 2020, the Settlement Administrator had received 2,110 completed W-8 and W-9 forms in response.  Dkt. 228-1 at 3.  On November 17, 2020, the Settlement Administrator began making telephone calls to Class

Members who had not yet returned W-9 forms.  *Id.*  Throughout, the

Settlement Administrator and counsel for all parties received no objections or

opt-outs.  Dkt. 226; dkt. 229.

### E. Appointment of Settlement Administrator

Donlin Recano is a company that specializes in claims administration.

Dkt. 200-5 at 1 (Voorhies Decl. ¶ 1).  For over 30 years, Donlin Recano has

provided notice to millions of class members and has administered billions of

dollars in claims.  *See id.* at 2 (¶ 3).  Plaintiffs have engaged Donlin Recano to

conduct the notice and distribution processes.  Dkt. 201 at 23.  As explained

above, Donlin Recano has dedicated substantial resources to providing notice

and ensuring continued claim administration.  Given the complexity and size of

this case, Donlin Recano's services in connection with implementing the notice

plan have been and will continue to be helpful.  Therefore, the Court appoints

Donlin Recano as Settlement Administrator.

### F. Partial Final Judgment

"Generally, if an action involves either multiple parties or one party with

multiple claims," an order dismissing only some parties or claims is not "final"

and is therefore not appealable.  *Brown v. Columbia Sussex Corp.*, 664 F.3d

182, 186 (7th Cir. 2011).  Federal Rule of Civil Procedure 54(b), "however,

empowers a district court to direct entry of a final judgment as to one or more,

but fewer than all, claims or parties."  *Id.*  Such a partial final judgment may be

entered "only if the court expressly determines that there is no just reason for

delay."  Fed. R. Civ. P. 54(b).  "A proper Rule 54(b) order requires the district

court to make two determinations: (1) that the order in question was truly a 'final judgment,' and (2) that there is no just reason to delay the appeal of the claim that was 'finally' decided."  *Gen. Ins. Co. of Am. v. Clark Mall Corp.*, 644 F.3d 375, 379 (7th Cir. 2011).

Here, there is no just reason for delaying the entry of judgment as to Conseco Life.  The Class's claims against Conseco Life have been "'finally' decided" through the Settlement Agreement.  *Gen. Ins.*, 644 F.3d at 37.  And any overlap with the claims against the remaining defendants does not prevent partial final judgment because the Settlement Agreement does not bind the CNO Defendants and does not "impair any rights of Plaintiffs to prosecute Claims in this Action or otherwise against the CNO Defendants."  Dkt. 200-1 at 3, 31.  Finally, there is no risk of inconsistent judgment because Conseco Life "continues to deny . . . all claims of wrongdoing or liability" but "has agreed to enter into [the Settlement Agreement], without in any way acknowledging any fault or liability, in order to avoid further expense and burden of protracted and costly litigation."  *Id.* at 2.

Partial final judgment as to Conseco Life under Federal Rule of Civil Procedure 54(b) is therefore appropriate.

### IV.
### Conclusion

For all these reasons and for the reasons in the parties' submissions, Plaintiffs' Motion for Final Approval is **GRANTED**.  Dkt. [214].

After holding a hearing, the Court **GRANTS FINAL APPROVAL** of the Settlement Agreement as fair, reasonable, and adequate under Federal Rule of

Civil Procedure 23(e)(2).  Plaintiffs, Class Members, Conseco Life, and their

counsel are directed to implement and consummate the Agreement according

to its terms and provisions.

The Court finds that the Class Notice and Class Notice Plan approved by

the Court satisfies Federal Rule of Civil Procedure 23 and due process

requirements.

The previously certified Class is finally certified under Federal Rule of

Civil Procedure 23(b)(3) for settlement purposes.  Each member of the Class

shall be bound by the Settlement Agreement, including the release set forth in

Article 8 of the Agreement.  *See* dkt. 214-3 at 12–19.  The **clerk shall include**

the release, dkt. 200-1 at 194–201, **as Exhibit A** to this order.

The Court designates Plaintiffs William Jeffrey Burnett and Joe H. Camp

as class representatives and appoints the following attorneys as Class Counsel:

> Stephen A. Weisbrod
> Shelli L. Calland
> Tamra B. Ferguson
> Saul Cohen
> WEISBROD MATTEIS & COPLEY PLLC
>
> Kathleen A. DeLaney
> DELANEY & DELANEY LLC

The Court confirms approval of Donlin Recano & Company, Inc. as

Settlement Administrator of the Claim Process.

For the reasons in this order and in the parties' submissions, Plaintiffs'

Motion for Attorneys' Fees, Expenses, and Plaintiffs' Incentive Awards is

**GRANTED**.  Dkt. [202]; dkt. 216.  Class Counsel are awarded fees of nine

million dollars ($9,000,000).  Class Counsel are awarded reimbursement of

$577,662.29 from the Settlement Cash Consideration for the amount of Preliminary Settlement Administration Expenses that Class Counsel have paid to date.  Conseco Life is given a credit toward the Settlement Cash Consideration of $50,000 for the Preliminary Settlement Administration Expenses that Conseco Life has paid to date.  Reasonable Settlement Administration Expenses incurred after the entry of this Final Approval Order under the Plan of Allocation shall be paid to Donlin Recano out of the Settlement Cash Consideration, provided that the total sum of all Class Counsel's Expenses and Settlement Administration Expenses (including Preliminary Settlement Administration Expenses) shall not exceed $1,250,000. Plaintiffs Burnett and Camp are awarded Plaintiffs' Service Awards of $25,000 each.  These fees and awards are reasonable in relation to the services performed, the time and resources expended, and the results achieved.  The fees and expenses are to be paid as outlined in Article 9 of the Settlement Agreement.

Partial final judgment under Federal Rule of Civil Procedure 54(b) will issue by separate entry.  The Court retains jurisdiction for enforcement of the Settlement Agreement.

**SO ORDERED.**

Date: 1/13/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

28

Distribution:

John M. Aerni
ALSTON AND BIRD LLP
john.aerni@alston.com

Kelly S Biggins
Locke Lord LLP
300 South Grand Avenue       Suite 2600
Los Angeles, CA 90071

James H Bilton
LOCKE LORD LLP
jbilton@lockelord.com

Taylor F. Brinkman
LOCKE LORD LLP
tbrinkman@lockelord.com

Shelli L. Calland
WEISBROD MATTEIS & COPLEY PLLC
scalland@wmclaw.com

Saul Cohen
WEISBROD MATTEIS & COPLEY PLLC
scohen@wmclaw.com

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Tamra B. Ferguson
WEISBROD MATTEIS & COPLEY PLLC
tferguson@wmclaw.com

Steven K. Huffer
S.K. HUFFER & ASSOCIATES, P.C.
steveh@hufferlaw.com

Adam J. Kaiser
ALSTON & BIRD LLP
adam.kaiser@alston.com

Barbara Louise Lyons
Law Office of Barbara L Llyons
80 El Camino Real  Apt D

Burlingame, CA 94010

Rachel Adi Naor
Alston and Bird LLP
rachel.naor@alston.com

Matthew B Nazareth
Locke Lord LLP
300 South Grand Avenue  Suite 2600
Los Angeles, CA 90071

Samuel J. Park
ALSTON AND BIRD, LLP
samuel.park@alston.com

Phillip Russell Perdew
LOCKE LORD LLP
pperdew@lockelord.com

Carl C Scherz
LOCKE LORD LLP
cscherz@lockelord.com

Kristin Shepard
ALSTON & BIRD LLP
kristin.shepard@alston.com

T. Esther Silberstein
WEISBROD MATTEIS & COPLEY PLLC
esilberstein@wmclaw.com

Derek Y. Sugimura
WEISBROD MATTEIS & COPLEY PLLC
dsugimura@wmclaw.com

Stephen A Weisbrod
WEISBROD MATTEIS & COPLEY PLLC
sweisbrod@wmclaw.com