UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM JEFFREY BURNETT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:18-cv-00200-JPH-KMB |
| ) | |
| CNO FINANCIAL GROUP, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING THE CNO DEFENDANTS' MOTION TO MAINTAIN DOCUMENTS UNDER SEAL**

Presently pending before the Court is the CNO Defendants' Motion to Maintain Documents Under Seal. [Dkt. 435.] In this motion, the CNO Defendants ask to seal four documents that were previously disclosed to state insurance regulators as well as an intercompany services agreement. They have also filed additional documents under seal that were designated as "Confidential" by former Defendant Conseco Life, but the CNO Defendants have not taken a position on whether those additional exhibits should remain under seal. For the reasons explained below, this pending motion is **DENIED**.

## I.  BACKGROUND

The Plaintiffs brought this class action lawsuit against Conseco Life Insurance Company, ("Conseco Life") as well as CNO Financial Group, Inc., and CNO Services LLC (the latter two collectively are the "CNO Defendants"). [Dkt. 108-1.] In 2021, the Court approved a settlement agreement between the Plaintiffs and Conseco Life, and Conseco Life was dismissed from this lawsuit. [Dkt. 237.] The Plaintiffs are now proceeding against the CNO Defendants under a two-part theory. First, they allege that Conseco Life committed breach of contract with respect to

certain LifeTrend insurance policies issued to the Plaintiffs.  Second, they allege that the CNO Defendants are liable for this breach of contract under a theory of alter ego liability.  [Dkt. 108-1.]

In support of their Motion for Summary Judgment, the CNO Defendants have submitted a declaration of Angela Callahan, who is a Market Conduct Analyst for CNO Financial Group, Inc., and eleven attached exhibits.  [Dkts. 432; 432-1 to 11.]  All eleven exhibits have been filed under seal.  [Dkts. 433-1 to 11.]  Each exhibit falls within the scope of the Stipulated Protection Order issued by the MDL predecessor to this case in September 2013.  *See In re: Conseco Life Insurance Company LifeTrend Insurance Marketing and Sales Practice Litigation*, MDL No. 2124, dkt. 508 ("Stipulated Protection Order").  The CNO Defendants seek to maintain under seal Exhibits 2-5 and 10.  [Dkt. 436 at 2 (citing dkts. 433-2; 433-3; 433-4; 433-5; 433-10).]  They argue that these exhibits "contain proprietary, commercially sensitive information, including but not limited to documents produced to the CNO Defendants' regulators in the course of a market conduct examination and [are] expressly exempted from public disclosure."  [*Id.*]  The CNO Defendants take no position on whether the other exhibits—Exhibits 1, 6-9, and 11—should remain under seal.[1]  [Dkt. 435 at 2-3.]  The Plaintiffs object to maintaining Exhibits 2-5 and 10 under seal.  [Dkt. 437.]  They argue that the documents at issue are more than ten years old and are no longer relevant to Conseco Life's business operations.  [*Id.*]

---

[1] The CNO Defendants state that Exhibits 1, 6-9, and 11 contain information that was designated confidential by Conseco Life.  [Dkt. 435 at 3.]  They note that Conseco Life was sold to William Re in 2014 and was subsequently renamed Wilco Life and that "Wilco Life may provide a brief in support of this motion with respect to the remaining Designated Materials."  [*Id.*]  Wilco Life has previously filed a third-party brief objecting to removing confidentiality designations from other exhibits, [*see* dkt. 415], but Wilco Life has not filed anything related to the alleged confidentiality of the exhibits at issue herein.

## II.  LEGAL STANDARD

When documents are used in a court proceeding to decide the merits of a party's claims, they are presumptively "'open to public inspection unless they meet the definition of trade secret or other categories of bona fide long-term confidentiality.'" *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009) (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)).  A showing of good cause is required to seal any portion of the record of a case from the public. *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999).  Good cause to seal confidential information may exist when the confidential material is non-dispositive or where documents contain trade secrets or other categories of sensitive confidential information.  *Baxter*, 297 F.3d at 545-46.  That said, materials that "'influence or underpin'" a decision by the Court are presumptively open to public inspection.  *Bond*, 585 F.3d at 1075 (quoting *Baxter*, 297 F.3d at 545).

Certain categories of information are required to be sealed by statute or are appropriately sealed at the court's discretion.  For instance, documents that contain "the name of, or other information relating to" a detainee "shall not be public records."  8 C.F.R. § 236.6.  Information regarding an individual's Social Security number or date of birth should be redacted, as may other personal and sensitive information such as information regarding an individual's medical history. *See, e.g.*, Fed. R. Civ. P. 5.2(a); *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (finding that the presumption of public access can be rebutted "if there are compelling reasons of personal privacy"); *United States v. Edwards*, 672 F.2d 1289, 1293 (7th Cir. 1982) (courts may consider whether the information would gratify private spite or promote public scandal); *Doe 1 v. NorthShore Univ. HealthSystem*, 2021 WL 5578790, at *9-10 (N.D. Ill. Nov. 30, 2021) (noting

that medical information and other privacy concerns sufficiently overcame the strong presumption of public access).

Courts have further found that it is appropriate in certain circumstances to keep the identity or personal information about law enforcement officials out of the public record, particularly when a countervailing public interest in disclosure has not been identified. *See Lamb v. Millennium Challenge Corp.*, 334 F. Supp. 3d 204, 216-17 (D.D.C. 2018) (under the Freedom of Information Act, "government investigators and employees 'have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives'") (quoting *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980)).

### III.  DISCUSSION

**A.  Exhibits 2, 4, and 5 – Communications with State Regulators [Dkts. 433-2; 433-4; 433-5]**

Exhibits 2, 4, and 5 are documents that were provided to state insurance regulators or that reflect the CNO Defendants' communications and agreements with state insurance regulators as part of a multistate market conduct examination. [Dkts. 433-2; 433-4; 433-5.]  The CNO Defendants argue that these documents are confidential pursuant to Ind. Code § 27-1-3.1-15. [Dkt. 436 at 3.]  That statute provides, in relevant part:

> All working papers, recorded information, documents, and copies thereof produced by, obtained by, or disclosed to the [insurance] commissioner or any other person in the course of an examination under this chapter . . . are confidential and privileged; are not subject to public inspection or copy under [the Indiana Access to Public Records Act]; are not subject to subpoena; are not subject to discovery or admissible in evidence in a private civil action; and may not be made public by the commissioner or any other person, except to the extent provided in section 14 of this chapter.

Ind. Code § 27-1-3.1-15(a).

4

The CNO Defendants argue that this statute requires the Court to maintain these exhibits under seal. [Dkt. 436 at 10, 11, 17-19, 27, 33-35.] They rely on an order from a different case in this District that granted a motion to compel the production of documents that fell under the purview of this statute but noted that those same documents were shielded from public view pursuant to a protective order in that case. [*Id.* (citing *Maple Creek Commons Homeowners Ass'n v. State Farm Fire and Cas. Co.*, 2012 WL 14022 (S.D. Ind. Jan. 4, 2012)).]

In response, the Plaintiffs argue that Exhibits 2 and 5 are more than ten years old and relate to insurance products that have been off the market for more than fifteen years. [Dkt. 437 at 2.] They state that it is "hard to see how making this information public would impair the work of insurance commissioners in the future or provide meaningful inside information to competitors. The balance weighs in favor of keeping this information about this federal litigation open to public view." [*Id.*] The Plaintiffs also argue that Exhibit 4, which is a Regulatory Settlement Agreement ("RSA") between Conseco Life and several state insurance commissioners, including the Indiana Insurance Commissioner, is already a public document that is easily accessible on the State of Oregon's Division of Financial Regulation's website. [*Id.* at 2-3 (citing https://dfr.oregon.gov/AdminOrders/actions_2010/insurer_2010/marketplace_2010/10-07-001-settlement.pdf (lasted visited May 28, 2024)).] They note that the exhibits to the RSA in Exhibit 4 are available on the Idaho Department of Insurance's website. [*Id.* at 3 (citing https://doi.idaho.gov/wp-content/uploads/DocketIndex/1280.pdf (last visited May 28, 2024)).]

In reply, the CNO Defendants reiterate that Exhibits 2, 4, and 5 were produced to the Indiana Insurance Commissioner and by statute should be shielded from public view. [Dkt. 438 at 2.] They acknowledge that the RSA is already publicly available online, but they incorrectly argue that the exhibits that they have attached to the RSA are not. [*Id.*] Those exhibits

include a table titled "Lifetrend Policies by Issue State – Sorted by Number of Policies as of 4/28/2010," a Conseco Life Policy Endorsement, form letters to policyholders, a document titled "Face Reduction Premium Paying and OPPP Version Endorsement," and documents relating to a Settlement Pool of Money. [Dkt. 433-4 at 60-86.]

The Court concludes that the CNO Defendants have not met their burden to show that good cause exists to seal Exhibits 2, 4 and 5. The CNO Defendants materially rely on these exhibits in support of their Motion for Summary Judgment. [Dkt. 434 at 10, 11, 17-19, 27, 33-35.] Thus, the presumption is that these documents should be publicly accessible. *See Bond*, 858 F.3d at 1074-75 (explaining that the public has a greater interest in viewing documents that are materially relied upon by the litigants than it has in viewing unfiled discovery materials). Further, this is a class action lawsuit on a topic broadly affecting the public, and the public's interest in viewing documents material to the Court's rulings is significant. There is no personally sensitive information in these exhibits, and the CNO Defendants have not shown how the public disclosure of these exhibits could potentially harm their business competitiveness given that the documents are more than a decade old and relate to former products that are no longer on the market. Finally, the RSA and the RSA exhibits are already publicly available.

While the existence of an Indiana statute limiting the public disclosure of certain documents from public view gives the Court some pause, the Indiana statute at issue is not dispositive to the Court's analysis and the case the CNO Defendants rely upon is distinguishable. *Maple Creek* merely noted that certain unfiled discovery was subject to a protective order and that granting a motion to compel against an insurance company would not automatically result in the public disclosure of those documents. *Maple Creek*, 2012 WL 14022, at *3-4. At that point in the litigation, no party had materially relied upon the contested documents and no party was seeking

the public disclosure of those documents. Thus, the procedural posture of *Maple Creek* was materially different from the posture of the issue presently before the Court in this case—specifically, there was no direct challenge in *Maple Creek* to maintaining the discovery under seal, and the public's interest in viewing the unfiled discovery in *Maple Creek* was substantially less than the public's interest in viewing the exhibits materially relied upon by the CNO Defendants in support of their motion for summary judgment.[2] *See Bond*, 858 F.3d at 1074-75. *Maple Creek* is not on all fours with the facts of this case, and the CNO Defendants have not provided any additional case law interpreting Ind. Code § 27-1-3.1-15 supporting their position that Exhibits 2, 4, and 5 be shielded from public view.

In sum, the balance of interests weighs in favor of public disclosure of Exhibits 2, 4, and 5. The CNO Defendants have not shown that public disclosure would harm their business competitiveness or that there is some other interest that warrants shielding these exhibits from public view. The documents are more than a decade old and relate to products that are no longer on the market. Accordingly, the CNO Defendants' motion to seal these exhibits is **DENIED**.

### B. Exhibit 3 – Form B Annual Registration Statement [Dkt. 433-3]

Exhibit 3 is the first six pages of the Form B Consolidated Insurance Holding Company System Annual Registration Statement that CNO Services, LLC, submitted to the Insurance Departments of Illinois, Indiana, Pennsylvania, and Texas in 2013. [Dkt. 433-3.] The exhibit includes a "List of CNO insurers" and describes the identity and control of two those insurers, namely Colonial Penn Life Insurance Company and Conseco Life. [*Id.*] The exhibit provides

---

[2] The Court has reviewed the *Maple Creek* docket. Shortly after the Court granted the Plaintiff's motion to compel, the Parties entered into a settlement agreement. *See Maple Creek*, Case No. 1:08-475-TWP-MJD, dkt. 121 (S.D. Ind. Feb. 16, 2012). Thus, the issue of whether Ind. Code § 27-1-3.1-15(a) would have prevented the documents from becoming publicly available had they been relied upon by the Parties for a material purpose in the litigation was never decided.

these insurers' principal executive offices, the different names by which the insurers had been called, and the ownership of the insurers. [*Id.*] According to the Table of Contents, the Form B is thirty-eight pages total and includes additional information about other CNO subsidiaries that is not included in Exhibit 3, which merely includes the first six pages of the Form B Annual Registration Statement. [*Id.*]

The CNO Defendants argue that Exhibit 3 should remain sealed because it contains "proprietary information not only for [Conseco Life], but for CNO Financial Subsidiaries wholly unrelated to this action, regarding (1) company operations; (2) company assets and risks; (3) details of company contacts; (4) company investments; (4) other financial information." [Dkt. 436 at 5 (emphasis removed).] The CNO Defendants also argue that "even if this Court were to determine that some of the information contained in the Form B was already public information, the presence of proprietary commercial information creates a compilation requiring non-disclosure." [*Id.*] In response, the Plaintiffs argue that Exhibit 3 is more than a decade old and includes only basic registration information. [Dkt. 437 at 2.] In reply, the CNO Defendants reiterate that Exhibit 3 contains information about unrelated subsidiaries and argue that "[t]here is simply no benefit to exposing confidential information that has no bearing whatsoever on the present lawsuit." [Dkt. 438 at 3.]

The Court is not persuaded that Exhibit 3 should remain sealed. This exhibit contains basic registration information from more than a decade ago. The CNO Defendants have not shown that making this exhibit publicly accessible will harm their business operations or the operations of any of their subsidiaries. While the Court understands that the exhibit has been offered for a limited purpose—*i.e.,* to show that Conseco Life was formed from the merger of subsidiaries, [*see* dkt. 434 at 11 (citing dkt. 433-3)]—and that not all the information in the exhibit is relevant to the

Motion for Summary Judgment, that fact alone does not entitle the CNO Defendants to seal the entire exhibit from public view.  The CNO Defendants could have simply filed a redacted version of Exhibit 3 under Local Rule 5-11(c) instead of filing the entire exhibit under seal.  That course would have made the relevant information publicly accessible while shielding the immaterial information from public view.  However, that is not the path they chose, and the Court will not seal the entire exhibit from public view simply because it contains other basic but irrelevant registration information.  Accordingly, the CNO Defendants' motion to seal Exhibit 3 is **DENIED**.

### C. Exhibit 10 – Intercompany Services Agreement [Dkt. 433-10]

Exhibit 10 is an Amendment to an Intercompany Services Agreement ("ISA") between Conseco Life and CNO Services, LLC, that went into effect on January 1, 2002.  [Dkt. 433-10.]  The CNO Defendants argue that the ISA contains commercially sensitive information that could be used by competitors to undermine their competitive position in the marketplace.  [Dkt. 436 at 6.]  In response, the Plaintiffs argue that the exhibit "contains no details about services to be performed or amounts to be charged," that "the CNO Defendants used the ISA as part of their scheme to siphon funds out of [Conseco Life,] and that "[t]he public has a right to know about these unseemly practices that underlie this case."  [Dkt. 437 at 3.]  The CNO Defendants reply that the ISA does contain commercially sensitive information.  [Dkt. 438 at 3.]  They also argue that the relevance of the document to the Plaintiffs' theory of alter ego liability, without more, does not mean that the document should be publicly accessible.  [*Id.*]

The Court finds that the CNO Defendants have not shown good cause to seal this exhibit.  As the CNO Defendants state in their opening motion, Conseco Life was sold to Wilton Re in 2014 and is now operating under the name Wilco Life.  [Dkt. 435 at 3.]  The CNO Defendants have not explained how unsealing a twenty-two-year-old agreement between themselves and a subsidiary

they no longer own would harm their competitive place in the market. Accordingly, their motion to seal Exhibit 10 is **DENIED**.

### D. Remaining Exhibits [Dkts. 433-1; 433-6 to -9; 433-11]

The CNO Defendants filed Exhibits 1, 6-9, and 11 under seal but "neither support nor oppose maintaining [them] under seal." [Dkt. 435 at 2-3.] They notified the Court that Conseco Life, which has since been purchased by Wilton Re and renamed Wilco Life, "may provide a brief in support of this motion with respect to" these remaining exhibits. [*Id.* at 3]. Wilco Life has previously filed a third-party brief in connection with a separate motion to seal, [*see* dkt. 415], but has not done so in this instance. Since no arguments have been made for why the remaining exhibits should be sealed, the motion to seal with respect to Exhibits 1, 6-9, and 11 is **DENIED**.

### IV. CONCLUSION

For the reasons explained above, the CNO Defendants' Motion to Maintain Documents under Seal, [dkt. 435], is **DENIED**. The **CLERK SHALL UNSEAL dkts. 433 and 433-1 through -11 after 21 days**, absent a Rule 72(a) objection, motion to reconsider, appeal, or further court order. *See* Local Rule 5-11(g).

Out of an abundance of caution given the claims of confidentiality at issue here, the **CLERK SHALL** send a courtesy copy of this Order to Wilco Life's counsel. Wilco Life has **14 days from the issuance of this Order** to seek reconsideration from the undersigned. Failure to do so will waive the issue for review. The Parties may not file briefs in opposition to or in support of any such filings by Wilco Life unless the Court *sua sponte* grants them leave to do so.

So **ORDERED**.

Date: 5/28/2024

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

10

Distribution:

All ECF-registered counsel of record via email

Courtesy Copies to Wilco Life's counsel:

Carl C. Scherz
LOCKE LORD LLP
cscherz@lockelord.com

James H. Bilton
LOCKE LORD LLP
jbilton@lockelord.com

P. Russel Perdew
LOCKE LORD LLP
rperdew@lockelord.com