UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM JEFFREY BURNETT, <br> JOE H CAMP, <br> <br> Plaintiffs, <br> <br> v. <br> <br> CNO FINANCIAL GROUP, INC., <br> CNO SERVICES LLC, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 1:18-cv-00200-JPH-KMB <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER DENYING PLAINTIFFS' MOTION TO MAINTAIN DOCUMENTS UNDER SEAL

Presently pending before the Court is the Plaintiffs' Motion to Maintain Documents under Seal. [Dkt. 450.] The Plaintiffs filed the documents at issue in connection with their response in opposition to summary judgment. Although the Plaintiffs filed the present motion to seal, the documents at issue were designated confidential by the Defendants. Defendants have filed a Brief in Support of the Motion to Maintain Documents under Seal, asking the Court to maintain thirteen of the exhibits under seal. [Dkt. 455 (citing dkts. 450-6, 450-9 to -14, 450-16, 450-19 to -23).] For the reasons explained below, the Motion to Maintain Documents under Seal is **DENIED**.

## I. BACKGROUND

The Plaintiffs brought this class action lawsuit against Conseco Life Insurance Company, ("Conseco Life") as well as CNO Financial Group, Inc., and CNO Services LLC (the latter two collectively are the "CNO Defendants"). [Dkt. 108-1.] In 2021, the Court approved a settlement agreement between the Plaintiffs and Conseco Life, and Conseco Life was dismissed from this lawsuit. [Dkt. 237.] The Plaintiffs are now proceeding against the CNO Defendants under a two-part theory. First, they allege that Conseco Life committed breach of contract with respect to

certain LifeTrend insurance policies issued to the Plaintiffs. Second, they allege that the CNO Defendants are liable for this breach of contract under a theory of alter ego liability. [Dkt. 108-1.]

In opposition to the Defendants' Motion for Summary Judgment, the Plaintiffs have filed twenty-four exhibits under seal. [Dkts. 450-1 to -24.] The exhibits were designated as "Confidential" by Conseco Life and the CNO Defendants and are subject to the Stipulated Protection Order issued by the MDL predecessor to this case in September 2013. *See In re: Conseco Life Insurance Company LifeTrend Insurance Marketing and Sales Practice Litigation*, MDL No. 2124, dkt. 508 ("Stipulated Protection Order").

The CNO Defendants have filed a Brief in Support of the Motion to Maintain Documents under Seal, asking the Court to maintain thirteen of the exhibits under seal. [Dkt. 455 (citing dkts. 450-6, 450-9 to -14, 450-16, 450-19 to -23).] In their Response in Opposition to the CNO Defendants' Brief in Support, the Plaintiffs ask that the exhibits be unsealed. [Dkt. 464.]

## II. LEGAL STANDARD

When documents are used in a court proceeding to decide the merits of a party's claims, they are presumptively "'open to public inspection unless they meet the definition of trade secret or other categories of bona fide long-term confidentiality.'" *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009) (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). A showing of good cause is required to seal any portion of the record of a case from the public. *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999). Good cause to seal confidential information may exist when the confidential material is non-dispositive or where documents contain trade secrets or other categories of sensitive confidential information. *Baxter*, 297 F.3d at 545-46. That said, materials that "'influence or underpin'" a decision by the Court are

presumptively open to public inspection. *Bond*, 585 F.3d at 1075 (quoting *Baxter*, 297 F.3d at 545).

Certain categories of information are required to be sealed by statute or are appropriately sealed at the court's discretion. For instance, documents that contain "the name of, or other information relating to 'a detainee shall not be public records.'" 8 C.F.R. § 236.6. Information regarding an individual's Social Security number or date of birth should be redacted, as may other personal and sensitive information such as information regarding an individual's medical history. *See, e.g.*, Fed. R. Civ. P. 5.2(a); *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (finding that the presumption of public access can be rebutted "if there are compelling reasons of personal privacy"); *United States v. Edwards*, 672 F.2d 1289, 1293 (7th Cir. 1982) (courts may consider whether the information would gratify private spite or promote public scandal); *Doe 1 v. NorthShore Univ. HealthSystem*, 2021 WL 5578790, at *9-10 (N.D. Ill. Nov. 30, 2021) (noting that medical information and other privacy concerns sufficiently overcame the strong presumption of public access).

## III. DISCUSSION

### A. Communications with State Regulators [Dkts. 450-6; 450-9; 450-19 to -23]

Exhibits 6, 9, and 19-23 are documents that were provided to state insurance regulators or that reflect the CNO Defendants' communications and agreements with state insurance regulators as part of a multistate market conduct examination. [Dkts. 450-6, 450-9, 450-19 to -23.] The CNO Defendants argue that these documents are confidential pursuant to Ind. Code § 27-1-3.1-15. They made a similar argument in support of a prior Motion to Maintain Documents Under Seal related to exhibits filed in support of their Motion for Summary Judgment ("MSJ Motion to Seal").

3

[Dkt. 455 at 3 (citing dkt. 434 at 2-4).]  The Court ultimately rejected those arguments and denied the MSJ Motion to Seal.  [Dkt. 485 at 4-7.]

As an initial matter, it is not clear that any of the exhibits at issue fall under the scope of Ind. Code § 27-1-3.1-15, which applies to "working papers, recorded information, documents, and copies thereof produced by, obtained by, or disclosed to the [Indiana insurance] commissioner or any other person in the course of an examination under this chapter." Ind. Code § 27-1-3.1-15(a). Exhibit 6 is a portion of a deposition transcript from May 2023.  [Dkt. 450-6.]  Exhibit 9 is a document that Conseco Life sent to Florida insurance regulators.  [Dkt. 450-9.]  Exhibit 19 is a table of Conseco Life LifeTrend policy data, and it is not clear who produced or received the document.  [Dkt. 450-19.]  Exhibit 20 is a document submitted by AGI Services to the Florida Office of Insurance Regulation regarding Conseco Life LifeTrend policy rates.  [Dkt. 450-20.] Exhibit 21 is document that includes Conseco Life's responses to an examination by AGI Services on behalf of the Florida Office of Insurance Regulation.  [Dkt. 450-21.]  Exhibit 22 is an email dated August 31, 2009, that discusses Conseco Life LifeTrend policies.  [Dkt. 450-22.]  Exhibit 23 is a 2007 Memorandum produced by Milliman regarding a Conseco Life LifeTrend policy analysis.  [Dkt. 450-23.]  The CNO Defendants neither describe these exhibits in detail nor explain how they fall within the scope of Ind. Code § 27-1-3.1-15 in their Brief in Support of this motion or in their subsequent reply brief.  [*See* dkt. 455 at 3; dkt. 465 at 2.]  They specifically have not shown that documents submitted to Florida insurance regulators or a transcript of a deposition taken during the course of this lawsuit fall under the scope of that Indiana insurance statute.

Further, there is a presumption that exhibits materially relied upon by the Parties should be open to public view, and the Defendants have the burden of showing why they should remain under seal.  *See Bond*, 858 F.3d at 1074-75.  Here, the CNO Defendants have not shown that the

4

documents at issue fall within the scope of Ind. Code § 27-1-3.1-15, which is the only argument they proffer in support of maintaining those documents under seal. [*See* dkt. 455 at 3; dkt. 465 at 2.] Even if the documents did fall within the scope of that Indiana statute, the CNO Defendants have not shown that this fact alone would require that the exhibits remain under seal. The exhibits concern insurance policies that have been off the market for more than a decade, and they have not made a sufficient showing that making these exhibits public would harm the CNO Defendants' or Conseco Life's business competitiveness. Further, the 2012 District Court Order the CNO Defendants cite in support of this motion is distinguishable, as explained in the Order denying the MSJ Motion to Seal. [*See* dkt. 485 at 6-7 (discussing *Maple Creek Commons Homeowners Ass'n v. State Farm Fire and Cas. Co.*, 2012 WL 14022 (S.D. Ind. Jan. 4, 2012)).]

In sum, the CNO Defendants have neither shown that Exhibits 6, 9, and 19-23 fall within the scope of an Indiana insurance statute mandating confidentiality nor shown that making these exhibits public would harm their business competitiveness. Given these circumstances, the Court finds that the CNO Defendants have not carried their burden, and their request to maintain these exhibits under seal is **DENIED**.

### B.  2007 and 2008 Actuarial Memoranda [Dkts. 450-10; 450-11]

Exhibits 10 and 11 are Actuarial Memoranda from 2007 and 2008, respectively. Each of these exhibits "describe[s] the analysis which [the author] determine[d] reserve and supporting asset adequacy for the business of [Conseco Life] in force at the valuation date." [Dkt. 450-10 at 6; dkt. 450-11 at 6.]

The CNO Defendants argue that these memoranda "contain proprietary information regarding: (1) company operations; (2) company assets and risks; (3) details of company contracts; (4) company investments; (5) financial models and projections; and (6) other financial information

including net gains and operating income." [Dkt. 455 at 4.] They state that "[s]uch information, including asset projections, investment strategies, and historical profit and loss data, are considered commercial[ly] sensitive information not subject to public disclosure." [*Id.* (citing *Marine Travlift, Inc. v. Marine Lift Sys.*, 2013 U.S. Dist. LEXIS 88269, at \*5 (E.D. Wis. June 24, 2013)).]

The Plaintiffs oppose maintaining these exhibits under seal because the records are "over a decade old and involve a closed book of business." [Dkt. 464 at 2.] In reply, the CNO Defendants argue that these memoranda "include a wealth of information that is not only confidential and maintained as such, but the vast majority of which has no bearing on this case." [Dkt. 465 at 2.]

The Court finds that the CNO Defendants have not carried their burden with respect to sealing these exhibits. While it is well-established that documents containing legitimate trade secrets may remain under seal, *see Bond*, 585 F.3d at 1075, the CNO Defendants have not explained how Conseco Life's Actuarial Memoranda from 2007 and 2008 could harm their business competitiveness today.

The Court also finds that the Order from the Eastern District of Wisconsin that the CNO Defendants rely upon in their opening brief is distinguishable. First, that case did not involve insurance companies, actuarial memoranda, or information about products that are no longer on the market and that was more than a decade old. *See generally*, *Marine Travelift*, 2013 WL 3200660. Further, that order was actually vacated by that court two months later, an important fact that the CNO Defendants fail to mention at any point in their briefing on this motion. *See Marine Travelift, Inc. v. Marine Lift Systems, Inc.*, 2013 WL 4087555, at \*3 (E.D. Wis. August 13, 2013) ("Upon further consideration, however, the court is now convinced that MTI's argument, even as to those portions of the record it requested remain under seal, lacks the kind of detail that *Baxter* requires in order to grant such relief."). In reversing its prior order, the court explained that

6

"a party seeking such relief must explain how disclosure would cause harm and why the harm predicted warrants secrecy." *Id.* at *1. Like the designating party in *Marine Travelift*, the CNO Defendants have not shown how they would be harmed by making these exhibits open to the public, and their boilerplate assertion that the exhibits contain "commercial[ly] sensitive information" is unconvincing. Accordingly, the CNO Defendants' request to maintain these exhibits under seal is **DENIED**.

### C. Plaintiff's Expert Reports [Dkts. 450-12 to -14]

The Plaintiffs, the CNO Defendants, and Conseco Life briefed the issue of unsealing all seven of the Plaintiffs' expert reports in response to the Plaintiffs' previous Motion to Remove Confidentiality Designations from the Plaintiff's Expert Reports ("Motion to Remove Confidentiality Designations"). [*See* dkt. 411.] The Court denied that motion without prejudice because none of the expert reports had been offered for a material purpose at the time the motion was filed. [Dkt. 484 at 6.] The Court noted, however, that the Plaintiffs had subsequently offered three of these expert reports in opposition to the CNO Defendants' Motion for Summary Judgment and that the issue of whether those three expert reports should be unsealed was the subject of the present motion. [*Id.*] The Court stated that it would "rule in due course on whether to unseal" those three expert reports, which include Mark Browne's expert report, Frederick Heese's rebuttal report, and Robert Muriel's rebuttal report when it decides the present motion to seal. [*Id.*]

In its Brief in Support of the present motion, the CNO Defendants rely upon the briefing related to the prior Motion to Remove Confidentiality Designations. [*See* dkt. 455 at 5 (citing dkts. 414; 415; 418; 420; 429).] The CNO Defendants do not make any additional arguments in

7

support of sealing the three expert reports at issue here other than those that were raised in the briefing on the prior motion.[1]  [Dkt. 455 at 5 (citing dkts. 414; 415; 418; 420; 429).]

Conseco Life argues that the expert reports contain "non-public sensitive commercial information including financial and accounting data, internal discussions, communications, and reporting regarding that non-public financial and accounting data, non-public and trade secret matters of corporate governance, and non-public trade secret information regarding blocks of insurance products."  [Dkt. 415 at 6.]  The company provides a fairly detailed description of the confidential source material for these expert reports and points to specific ways in which Conseco Life and Wilton Re could be harmed by unsealing the expert reports.  [*See id.* at 8-9 (arguing that sensitive information in the reports would provide Conseco Life's competitors with insight into "future managerial actions" and "future earnings," that "corporate governance practices and procedures should remain under seal because they relate to internal operations considered trade secret and proprietary by Conseco Life and Wilton Re," and that "[s]pecific insurance block information, such as product specifications and product data unrelated to Plaintiffs' LifeTrend policies, is at the heart of the type of competitively sensitive commercial information sealing is intended to protect.").]

In support of unsealing the exhibits, the Plaintiffs argue that Conseco Life "has not issued new policies since 2007.  It was sold to Wilton Re in 2014.  [Conseco Life] fails to explain how a company whose book of business has been closed for more than fifteen years could be harmed

---

[1] In their opening brief on the Motion to Remove Confidentiality Designations, the CNO Defendants noted that Conseco Life was sold to Wilton Re in 2014 and subsequently renamed Wilco Life.  Because Wilco Life owns the LifeTrend 3 and LifeTrend 4 series policies, Wilco Life submitted a Brief in Opposition to the Motion to Remove Confidentiality Designations as an interested non-party.  For consistency, the Court will use the name "Conseco Life" when it refers to the company that is now named Wilco Life.

8

competitively by releasing outdated information about the estimated cost of services provided to it a decade ago or the fact that key topics are missing from its board minutes in the late 2000s." [Dkt. 418 at 2.]

Conseco Life argues that although the information in the expert briefs is "historical," the disclosure of this information could allegedly harm Wilton Re's competitiveness in its business of buying and selling blocks of insurance businesses, engaging in mergers and acquisitions, and negotiating with insurers and reinsurers.  [Dkt. 421 at 7.]  Conseco Life argues that "[i]f publicly disclosed, this information would risk placing Wilton Re and Conseco Life, both, at a financial and competitive disadvantage in future mergers and acquisitions within the life insurance and annuity industry."  [*Id.*]  That is because "[t]he merger and acquisition area for life insurance and annuity companies is highly competitive, and it is typical for Wilton Re to compete with numerous other insurance, reinsurance, and private equity companies when bidding for a target company or for the purchase of blocks of insurance business."  [*Id.* at 8.]  "If such entities obtain insight into Wilton Re's negotiation and pricing strategies based on public revelations regarding the prior Conseco Life transaction, which is revealed by a review of the details related to how Wilton Re conducted itself when acquiring Conseco Life, Wilton Re's competitors will be able to utilize this information for purposes of structuring their opposition offers and with respect to how they conduct themselves in competing negotiations."  [*Id.* (citing *BTL Indus., Inc. v. JV Med. Supplies, Inc.*, 2023 WL 7475893, at *2 (S.D. Ind. Oct. 3, 2023)).]

The Plaintiffs respond by arguing that "[a]ll of the categories that [Conseco Life] has identified are generic and are not tied to anything specific in the reports."  [Dkt. 429 at 1-2.] They also argue that "detailed information about the Stock Purchase Agreement between Wilton Re and CNO Financial and payments to CNO Services pursuant to the Transition Services

9

Agreement already are publicly available on the SEC website." [*Id.* at 2 (citing https://www.sec.gov/Archives/edgar/data/1224608/000122460817000013/cno1231201610-k.htm).] Neither Conseco Life nor the CNO Defendants respond to this argument in any subsequent briefing.[2] [*See generally* dkts. 455; 465.]

The Court finds that the CNO Defendants and Conseco Life have not met their burden of maintaining the three expert reports at issue in the present motion under seal. They have not responded to the Plaintiffs' argument that the information about the valuation and purchase of Conseco Life at the time of its sale to Wilton Re is already publicly available on the SEC's website. Further, Conseco Life's briefing on this issue, which the CNO Defendants incorporate in support of the present motion, makes general arguments regarding all seven of the Plaintiff's expert reports, but only three of those expert reports are the subject of the present motion. Conseco Life's briefing also makes several specific references to an expert report that is not the subject of the present motion. [*See* dkt. 415 at 8, 9 (citing July 6, 2023, Report of Fredrick G. Heese).] The only report at issue in the present motion that Conseco Life specifically references is the Report of Mark Browne from July 6, 2023. [*See* dkt. 415 at 9, 10.] However, Conseco Life merely notes that this report made determinations based on its review of information from "data extracts from the CK4 system" and "an analysis Conseco performed in response to a regulatory request." [*Id.*] Neither Conseco Life nor the CNO Defendants point to any information in Mark Browne's July 6, 2023 expert report that would be harmful if it were to become public.

---

[2] In their Reply in support of the present motion, the CNO Defendants state that "with respect to Plaintiffs' expert reports, the parties are in agreement that the documents should be maintained under seal." [Dkt. 465 at 2 (citing dkt. 434 at 1).] This assertion is not supported by the record and is belied by the Plaintiffs' consistent requests to unseal the expert reports.

The CNO Defendants could have modified the arguments set forth in the previous briefing to specifically address the three expert reports at issue in the present motion when they submitted their Brief in Support at dkt. 455. Instead, they rely exclusively on briefing from previous motions. That briefing does not explain how unsealing the three expert reports at issue here would harm their business competitiveness, nor does it address the Plaintiffs' argument that much of the allegedly confidential information in the expert reports is already publicly available on the SEC's website. Accordingly, the Court finds that the CNO Defendants and Conseco Life have not met their burden to maintain these exhibits under seal, and their request to maintain the three expert reports under seal is **DENIED**.

### D. Communications Regarding Reinsurance Agreement [Dkts. 450-16]

Exhibit 16 includes three internal emails between employees of CNO Financial Group. [Dkt. 450-16.] The emails were sent in December 2010, February 2011, and March 2011 and discuss a "Regulatory Settlement Agreement and the impact on the LifeTrend policies reinsurance arrangement." [*Id.*; dkt. 455 at 5.]

The CNO Defendants argue that "[r]einsurance contracts and communications regarding those contracts are commercially sensitive and should not be subject to public disclosure." [Dkt. 455 at 5.] The Plaintiffs do not specifically address this exhibit in their response, which the CNO Defendants take to be a tacit agreement that the exhibit should remain under seal. [Dkt. 465 at 2.]

The Court finds that the CNO Defendants have not met their burden that this exhibit should remain under seal. Even if the Court were to construe the Plaintiffs' failure to address this exhibit in their response brief, the public has an interest in open proceedings, and the Court may not relinquish its independent obligation to thoroughly review the Parties' request to keep certain exhibits under seal. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect

11

the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality.").  Further, the CNO Defendants have not explained how any information in this specific exhibit would be harmful to their business competitiveness or would otherwise prejudice them if it were to be made public.  Instead, they summarily argue that reinsurance agreements generally contain sensitive information without discussing why the information in these specific emails should be sealed.  Accordingly, their request to maintain this exhibit under seal is **DENIED**.

## IV. CONCLUSION

For the reasons explained herein, the Motion to Maintain Documents under Seal, [dkt. 450], is **DENIED**.  There is a strong presumption in favor of open proceedings because the courts belong to the public.  Sometimes exhibits must be sealed to protect the privacy interests of parties or other interested persons, and the party seeking to shield information from the public bears the burden of showing that its own privacy interests outweigh the public's interest in open proceedings.  The CNO Defendants and Conseco Life have not met that burden with respect to any of the filings they seek to seal in the pending motion.  Their broad assertions of trade secret are not sufficient to show that any of the information contained in these exhibits—all of which are more than a decade old—should be kept sealed and out of the public's view.  Accordingly, the **CLERK SHALL UNSEAL [dkts. 450 and 450-1 to -24] 21 days from the date of this Order**, absent a Rule 72(a) objection, motion to reconsider, appeal, or further court order.  *See* Local Rule 5-11(g).

**So ORDERED**.

Date: 6/24/2024

*Kellie M. Barr*

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

Courtesy Copies to Non-Party Conseco Life's Counsel

>    Carl C. Scherz
>    Locke Lord LLP
>    cscherz@lockelord.com
>
>    James H. Bilton
>    Locke Lord LLP
>    Jbilton @lockelord.com
>
>    P. Russell Perdew
>    Locke Lord LLP
>    rperdew@lockelord.com