UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM JEFFREY BURNETT, JOE H CAMP, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:18-cv-00200-JPH-KMB ) |
| CNO FINANCIAL GROUP, INC., CNO SERVICES LLC, | ) ) ) ) |
| Defendants. | ) |

**SEALED ORDER ON MOTIONS TO EXCLUDE EXPERT TESTIMONY**

Plaintiffs William Burnett and Joe Camp have filed a motion to exclude portions of expert testimony from Timothy Pfeifer and Mary Jo Hudson. Dkt. 475. CNO Financial Group and CNO Services ("CNO Defendants") have filed motions to exclude portions of expert testimony from Mark Browne and Robert Muriel. Dkt. 467; dkt. 468. For the reasons below, Plaintiffs' motion to exclude is **GRANTED**, dkt. [475]; and the CNO Defendants' motions to exclude are **GRANTED in part and DENIED in part** as to Mark Browne, dkt. [467], and **GRANTED** as to Robert Muriel, dkt. [468].

**I.
Facts and Background**

William Burnett and Joe Camp are former holders of certain "LifeTrend" life insurance policies. *See* dkt. 449-1; dkt. 449-2. They brought this case alleging that Conseco Life Insurance Company[1] breached their Policies by

---

[1] The Court has approved a class action settlement and entered final judgment as to Conseco Life Insurance Company. Dkt. 237; dkt. 251.

1

announcing and implementing changes in the calculation of Policy premiums and expense charges, which caused thousands of policyholders to surrender their Policies. Dkt. 108-1. Plaintiffs also allege that the CNO Defendants are liable under an alter ego theory. *Id.* at 76.

This case is set for bifurcated trials: a jury trial on liability for breach of contract to begin June 16, 2025, and a bench trial on alter ego liability to begin August 25, 2025. Dkt. 514. The CNO Defendants plan to call as witnesses Timothy Pfeifer as an expert in life-insurance policy development and Mary Jo Hudson as an expert in insurance regulation. Plaintiffs plan to call Mark Browne as an expert in insurance, risk management, and actuarial science, and Robert Muriel as an expert in accounting and corporate governance. Plaintiffs have filed a motion to exclude portions of expert testimony from Mr. Pfeifer and Ms. Hudson. Dkt. 475. The CNO Defendants have filed motions to exclude portions of expert testimony from Dr. Browne and Mr. Muriel. Dkt. 467; dkt. 468.

## II.
## Applicable Law

To testify as an expert, a witness must be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016). General qualifications are not enough; a foundation for answering specific questions is required. *Hall*, 840 F.3d at 926. A witness qualified with respect to the specific question being asked may give opinion testimony "if the proponent demonstrates to the court that it is more likely than not that":

> a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b) The testimony is based on sufficient facts or data;
> c) The testimony is the product of reliable principles and methods; and
> d) The expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *Hall*, 840 F.3d at 926. In short, proponents of expert evidence must "demonstrate by a preponderance of the evidence that their [experts'] opinions are reliable." Fed. R. Evid. 702 comm. note to 2023 am.

These requirements are evaluated under the two-step *Daubert* framework. *Robinson v. Davol Inc.*, 913 F.3d 690, 695 (7th Cir. 2019) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993)). For the first step, the proponent must "establish that the proposed witness would testify to valid scientific, technical, or other specialized knowledge." *Id.* If step one is satisfied, the proponent "must then show that the expert testimony will assist the trier of fact." *Id.* For this step, the Court "evaluates whether the proposed . . . testimony fits the issue to which the expert is testifying." *Id.*

### III. Analysis

**A. Timothy Pfeifer and Mary Jo Hudson**

The CNO Defendants plan to call Mr. Pfeifer as an expert in life-insurance policy development, *see* dkt. 477-1 at 5 (Pfeifer report), and Ms. Hudson as an expert in insurance regulation, *see* dkt. 477-3 at 4–5 (Hudson report). Plaintiffs do not challenge either witness's qualifications. *See* dkt. 479. Instead, they argue that Mr. Pfeifer and Ms. Hudson should be prohibited

from opining on legal conclusions about the meaning and legal effects of Policy terms. *Id.* at 1–7. The CNO Defendants respond that Mr. Pfeifer's and Ms. Hudson's opinions are not legal conclusions but "opinions regarding the regulatory and actuarial bases for the [Policies] and the administrative changes at issue in this litigation." Dkt. 490 at 2.

"It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence." *Jiminez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013). "As a general rule, accordingly, an expert may not offer legal opinions." *Id.* That includes opinions "about the meaning of . . . contracts" and their legal implications and effects. *RLJCS Enters., Inc. v. Prof'l Benefit Tr. Multiple Emp'r Welfare Benefit Plan & Tr.*, 487 F.3d 494, 498 (7th Cir. 2007).

Plaintiffs identify fourteen opinions as examples from Mr. Pfeifer and Ms. Hudson that improperly opine about the Policies' meaning and the permissibility of Conseco Life Insurance Company's actions under the Policies. Dkt. 479 at 4–7. For example:

- In my actuarial reading of the policies, there is no provision in the contracts or actuarial memoranda which indicates or suggests that once the [Optional Premium Payment] Provision is exercised, that the contract is paid-up or that a lower premium can be permanently paid.
- The actions taken by [Conseco Life] were consistent with actions permitted under the contract, in my opinion as an experienced actuary.

- The contract language under the LifeTrend contracts allowed [Conseco Life] substantial flexibility to manage its [cost-of-insurance] deductions.

- In my opinion, Plaintiffs' theory grossly mischaracterizes the terms of the Policies by suggesting that election of OPP status entitled them to permanently stop paying premiums under their Policies.

*Id.* (quoting Pfeifer's and Hudson's reports). Whenever these opinions offer legal conclusions about what the Policies mean and their legal effects on Conseco Life and the Policyholders, they are inadmissible. *See RLJCS Enters., Inc.*, 487 F.3d at 498; *Benefit Res. Grp., Inc. v. Westfield Ins. Co.*, No. 2:11-cv-64, 2013 WL 12199941 at *3 (N.D. Ind. Jan. 7, 2013) ("An expert is not permitted to provide expert testimony about the meaning of contracts, legal implications of conduct, or the scope of the insurer's duty under an insurance policy."); *Jakobovits v. PHL Variable Ins. Co.*, 645 F. Supp. 3d 95, 117–18 (E.D.N.Y. 2022) (excluding similar opinions from Mr. Pfeifer as "improper legal conclusion[s]").

Indeed, the CNO Defendants do not directly address these opinions about the specific meaning of policy terms and what they required of Conseco Life. *See* dkt. 490 at 25–27. They instead contend that Mr. Pfeifer can testify about industry terms of art and actuarial work on the LifeTrend Policies and similar policies. *Id.* And that Ms. Hudson can testify about industry terms of art and "how insurance regulations and insurance industry custom and practice inform the terms of the LifeTrend 3 and 4 policies and the administrative changes at issue." *Id.* at 17. It is true that experts can testify

5

about industry terms of art, professional standards, and typical practices. *See Delta Mining Corp. v. Big Rivers Elec. Corp.*, 18 F.3d 1398, 1402 (7th Cir. 1994); *cf. Lapsley v. Xtek, Inc.*, 689 F.3d 802, 817 (7th Cir. 2012) ("Expert testimony by engineers concerning what an ordinary engineer would understand and do is common-place in patent law."). For example, in *Jakobovits,* the court explained that Mr. Pfeifer's opinions about "industry standards" on insurance rates and regulations were not inadmissible as legal conclusions. 645 F. Supp. 3d. at 117. But industry practice and terms of art are not what Plaintiffs seek to exclude here—instead, they argue that Mr. Pfeifer and Ms. Hudson may not opine on legal conclusions about these Policies and what they allow. *See* dkt. 496 at 1. As explained above, those legal conclusions are inadmissible.

Mr. Pfeifer and Ms. Hudson therefore **may not opine** about their interpretations of language in the specific Policies at issue or about whether actions would or would not violate the terms of the Policies.[2] For the same reasons, Ms. Hudson **may not opine** that the LifeTrend Regulatory Settlement Agreement bars any of Plaintiffs' claims or that the existence of regulatory frameworks should prevent those claims. *See* dkt. 479 at 7–9. Indeed, the CNO Defendants agree that Ms. Hudson "has no opinion on the Court's jurisdiction," and instead intends to opine on regulatory background, including regulatory scrutiny related to the Policies. Dkt. 490 at 21–22.

---

[2] This does not restrict opinions about whether certain terms are generally industry terms of art, separate from whether these Policies used those terms in that way.

6

Beyond these restrictions, Mr. Pfeifer's and Ms. Hudson's testimony about terms of art; industry practice, including the role of actuaries; regulatory background; and the development of insurance policies may "be tested before the jury with the familiar tools of vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Lapsley*, 689 F.3d at 805, 809 (experts may "give a dissertation or exposition of . . . principles relevant to the case, leaving the trier of fact to apply them to the facts"). Plaintiffs' motion to exclude portions of Mr. Pfeifer's and Ms. Hudson's expert testimony is therefore **GRANTED** to the extent of this order. Dkt. [475].

**B. Mark Browne**

**1. Actuarial opinions**

Plaintiffs plan to call Dr. Browne as an expert in insurance, risk management, and actuarial science. *See* dkt. 492-1 at 1 (Browne report). He offers opinions that (1) the Policies were heavily front-loaded, (2) Conseco Life increased cost of insurance ("COI") rates even though mortality rates were improving, (3) the October 2010 COI increase was designed to recover prior losses, and (4) Conseco Life increased COI rates because of lower-than-expected interest rates. *Id.* at 14–21. The CNO Defendants challenge these opinions about "actuarial issues" because Dr. Browne is not an actuary, lacks relevant experience, and is merely restating evidence in the record. Dkt. 473 at 24–25. Plaintiffs respond that Dr. Browne is qualified by decades of experience as an economist working with actuarial issues. Dkt. 493 at 1–3.

While Dr. Browne is not an actuary and has not drafted life-insurance policies, he is an applied economist who has published research in actuarial journals. Dkt. 491-1 at 7 (Browne Dep. at 46). He has also explained that two of his opinions are economic. First, his report opines that the Policies are heavily front-loaded because they "anticipate[d] higher collections by Conseco relative to death benefit payouts in the early years followed by higher payouts relative to Conseco's collections in the later years." Dkt. 492-1 at 15. Second, he opines that Conseco Life raised COI rates because of lower-than-expected interest rates, which from "an economic perspective" could be "characterized as a transfer of interest rate risk from Conseco to the policyholders." *Id.* at 21–22.

These two opinions involve "insurance markets and risk," including pricing risk, which Dr. Browne studies as an economist. Dkt. 491-2 at 8 (Browne Dep. at 22). And the CNO Defendants cite no authority supporting their view that Dr. Browne's experience as an applied economist does not qualify him. *See* dkt. 473 at 24–25; dkt. 499 at 19–20 (citing cases for only the general proposition that experts may not testify outside their realm of expertise). While life-insurance companies hire actuaries instead of economists to do similar work, that does not preclude a qualified economist from offering these opinions. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (What matters is not the title or specialty, but whether the expert "has the adequate education, skill, and training."). Indeed, these two opinions are about how the Policies and COI increases functioned at a general economic level, placing them within Dr. Brown's qualifications. *See United States ex rel. Calderon v.*

8

*Carrington Mort. Servs.*, 70 F.4th 968, 974 (7th Cir. 2023) (expert lacking some mortgage-underwriting qualifications could testify "about underwriting practices generally").

Similarly, Dr. Browne's lack of experience drafting, designing, or pricing life-insurance products does not preclude these opinions' admissibility. *See id.* ("Rule 702 does not suggest that specialized knowledge can be developed only in certain ways . . . . [E]xperts and expertise come in many different forms."); *Anderson v. Raymond Corp.*, 61 F.4th 505, 509 (7th Cir. 2023). While "nuanced, multi-factored analyses" about life-insurance policies might be outside Dr. Browne's experience, he is qualified to offer more general opinions about the Policies' front-loading and the relationship between COI increases and interest rates. *See Calderon*, 70 F.4th at 975; *Gayton*, 593 F.3d at 617–18 (generalist experts may offer opinions "if [they have] the adequate education, skill, and training to reach them"). And the opinions go beyond merely reciting evidence in the record, because Dr. Browne draws his own economic conclusions from the facts he considered. *See* dkt. 492-1 at 15–16 (explaining the factual basis for opining that the Policies are heavily front loaded), 19–21 (explaining the factual basis for opining how interest-rate risk affected Conseco's profitability and policyholders).

The remaining two "actuarial opinions" that the CNO Defendants challenge are that Conseco Life increased COI rates even though mortality rates were improving, and that the October 2010 COI increase was designed to recover prior losses. *Id.* at 17–19. For these opinions, Dr. Browne merely

9

recites documents in the record. *See id.* His report therefore does not identify any economic methodology applied to those documents or any economic basis for his adopting those opinions, *see id.*, and Plaintiffs offer none in their brief, *see* dkt. 493 at 15–16. While Dr. Browne may form opinions based on information provided to him, Fed. R. Evid. 703, he "may not simply summarize the out-of-court statements of others as his testimony," *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014); *see Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014). Plaintiffs have not shown that these two opinions go beyond repeating information provided to Dr. Browne, so they have not carried their burden to show that they are admissible.

In sum, Dr. Browne **may opine** whether the Policies were heavily front-loaded and whether Conseco Life increased COI rates because of lower-than-expected interest rates. He **may not opine** whether Conseco Life increased COI rates even though mortality rates were improving and whether the October 2010 COI increase was designed to recover prior losses.

### 2. Inflated payment opinions

After the motion to exclude Dr. Browne's testimony was briefed, the Court set bifurcated trials: a jury trial on liability for breach of contract and a bench trial on alter ego liability. Dkt. 514. The Court therefore ordered the parties to file a statement identifying any expert-testimony issues "that relate solely to alter ego liability." *Id.* at 5; *see Kansas City S. Ry. Co. v. Sny Island Levee Drainage Dist.*, 831 F.3d 892, 900 (7th Cir. 2016) (When "a trial judge conducts a bench trial, the judge need not conduct a Daubert (or Rule 702)

10

analysis before presentation of the evidence, even though he must determine admissibility at some point.").

The parties disagree whether Dr. Browne's opinions about inflated expense and service payments from Conseco Life to the CNO Defendants are relevant only to alter ego liability, or also to breach-of-contract liability. Dkt. 516 at 3. Plaintiffs argue that the opinions are relevant to breach—and therefore admissible at the jury trial—because inflated payments led Conseco Life to raise policyholders' COI charges in violation of the Policies. *Id.* at 5–6. The CNO Defendants contend that whether the payments were inflated is not relevant to breach. *Id.* at 8–10.

Plaintiffs allege that Conseco Life breached the Policies by increasing COI charges "based only on reasons other than mortality" and to recoup prior losses in violation of the Policies. Dkt. 506 at 14–19 (order denying summary judgment). What matters, then, is any connection between the costs that the increased charges covered and mortality or prior losses. *See id.* (citing *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1335 (11th Cir. 2024)). Plaintiffs therefore want to use Dr. Browne's opinions to support their argument that raising COI charges "to make up for abnormally high expense losses" helps show that the increased charges "were totally disconnected from mortality rates" and were to recoup prior losses. Dkt. 516 at 6.

But Plaintiffs do not explain how Dr. Browne's opinions—that Conseco Life's payments to the CNO Defendants were "inflated" and "unusually high"

11

compared to Conseco's peers—address mortality rates and prior losses. *See* dkt. 493 at 5, 14–15. That's because these breach-of-contract issues turn on whether there's a dollars-and-cents connection between the expense increases and mortality-rate and prior losses. *See* dkt. 506 at 14–19. So even if pressure to inflate payments from Conseco Life to the CNO Defendants "went into" the decision to raise rates, as Plaintiffs argue, dkt. 516 at 5–6, that would not support breach. *See Reid Hosp. & Health Care Servs., Inc. v. Conifer Rev. Cycle Sols., LLC*, 8 F.4th 642, 655 (7th Cir. 2021) (Motive "is generally regarded is irrelevant" in a breach of contract claim.). And for the same reason, whether Conseco Life's expenses were "abnormally high" compared to its peers does not matter under the Policy language. *See id.* ("A breach is a breach, based on objective standards of performance."). Without that connection, Dr. Browne's opinions about how Conseco Life's charges compared to its alleged peer companies cannot "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Instead, liability turns on the fact questions of whether those expenses were connected to mortality and whether they covered prior losses. *See* dkt. 506 at 14–19 (citing *Advance Tr. & Life Escrow Servs., LTA*, 93 F.4th at 1335). Moreover, the inadmissibility of opinions about whether the expenses were inflated does not affect the admissibility of the existence and amount of the expenses themselves. *See* dkt. 516 at 5–6. Dr. Browne's opinions that Conseco Life's expenses and service payments were inflated therefore would not be helpful to the jury under step two of Rule 702's gatekeeping standard. *See*

12

*Downing v. Abbot Labs.*, 48 F.4th 793, 809–10 (7th Cir. 2022) ("For expert testimony to be admissible, the expert must have had something useful to say about the particular circumstances at issue."). Even if there were some tangential relevance to whether Conseco Life was inflating expense charges, that would be "substantially outweighed" by the risk of turning the jury's focus to whether Conseco Life was a bad actor instead of whether it breached the Policies. *See Artis v. Santos*, 95 F.4th 518, 525, 528 (7th Cir. 2024) ("Rule 403 allows a court to exclude even relevant evidence, including expert testimony."); *Pittman v. County of Madison, Ill.*, 970 F.3d 823, 829–30 (7th Cir. 2020) (affirming the exclusion of expert testimony that "was far more likely to confuse the jury than to help it").

Dr. Browne therefore **may not opine** at the jury trial whether Conseco Life's expenses and service payments to the CNO Defendants were inflated.[3]

### C. Robert Muriel

Plaintiffs plan to call Robert Muriel as an expert in accounting and corporate governance. *See* dkt. 488-1 at 4. The parties agree that Mr. Muriel's corporate-governance opinions are relevant to only alter ego issues, dkt. 516 at 2, so he **may not opine** at the jury trial on those issues, *see Kansas City S. Ry. Co.*, 831 F.3d at 900. Mr. Muriel also shares Dr. Browne's opinions that Conseco Life paid the CNO Defendants excessive fees based on "comparable life insurance companies." Dkt. 488-1 at 3; *see* dkt. 516 at 6. For the same

---

[3] Because in a bench trial the Rule 702 analysis is not required "before presentation of the evidence," *Kansas City S. Ry. Co.*, 831 F.3d at 900, the Court does not at this point address the admissibility of these opinions at the bench trial.

reasons as for Dr. Browne, these opinions would not help the jury determine breach-of-contract liability, so Mr. Muriel **may not opine** regarding them at the jury trial. *See Kansas City S. Ry. Co.*, 831 F.3d at 900.

That leaves Mr. Muriel's opinions about "statutory accounting issues." *See* dkt. 474 at 11. The CNO Defendants have not clearly defined the "decidedly scurrilous opinions" that they seek to exclude, but they identify only Mr. Muriel's opinions that Conseco Life's "statutory financial statements were materially 'misstated' or reflected 'inappropriate accounting treatment.'" *Id.* at 11–14. They argue Mr. Muriel is not qualified to offer those opinions and that "he conducted no qualitive or quantitative analysis and employed no methodology used by practitioners in the field." *Id.* Plaintiff responds that Mr. Muriel's accounting education qualifies him and that his analysis is reliable because he considered a "huge quantity of information" and broke down Conseco Life's financial reports. Dkt. 489 at 4–7, 11–12.

Evaluating an expert's reliability requires "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021) (quoting *Daubert*, 509 U.S. at 592–93). Relevant factors may include "whether the expert's theory has been (1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or is (4) generally accepted within the specific scientific field." *Id.* "[T]his list is neither exhaustive nor mandatory." *Gopalratnam v. Hewlett–Packard Co.*, 877 F.3d 771, 780 (7th Cir.

14

2017). Instead, the test is "flexible" and focuses "on the soundness and care with which the expert arrived at her opinion." *Kirk*, 991 F.3d at 873.

Here, Mr. Muriel's report opines that Conseco Life's actions were not "fair and reasonable" and were "inappropriate," but does not reference statutory-accounting standards. Dkt. 488-1 at 12–15. It then concludes by opining that "[e]xcessive service fees and an 'ability to pay' approach to allocating expenses among the insurance entities left CLIC with statutory statements that have been misstated for many years." *Id.* at 20. But in reaching that conclusion, Mr. Muriel does not identify any statutory-accounting principles, show how he applied them to Conseco Life's financial statements, or explain why they demonstrate that those financial statements are misleading or inaccurate. *See* dkt. 488-1 at 8 (noting without elaboration that capital and risk are evaluated and reported "on a statutory accounting basis"). That is not enough to show a reliable methodology. *See Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010) ("Given Gutierrez's failure to explain his methodology, the district court could conclude that the report offered nothing of value to the judicial process.").

Plaintiffs nevertheless argue that Mr. Muriel's analysis is seen in the exhibits attached to his report and the list of materials he considered. Dkt. 489 at 11–12. But the list of factual inputs doesn't include statutory-accounting principles, dkt. 488-1 at 43–44, and even if it did that wouldn't constitute reliable methodology. *See Kirk*, 991 F.3d at 875 (citing "irrelevant" industry literature doesn't make an expert's speculation reliable). And the

15

attachments are mere bar graphs charting years and dollar amounts, so they represent conclusions rather than methodology. *See* dkt. 488-1 at 22–33; *Minix*, 597 F.3d at 835 ("To be admissible under Rule 702, the expert's opinion must offer more than a 'bottom line.' The expert must explain the methodologies and principles supporting the opinion."). Since Mr. Muriel did not identify the relevant accounting principles or any methodology for applying them, Plaintiffs have not carried their burden to show that Mr. Muriel's opinions about "misstated" financial reports are reliable. *See Minix*, 597 F.3d at 835; *accord Burns v. Sherwin–Williams Co.*, 78 F.4th 364, 374 (7th Cir. 2023) (affirming the exclusion of "a bare conclusion").

Mr. Muriel therefore **may not opine** whether Conseco Life's financial statements satisfied statutory accounting standards.[4]

### III. Conclusion

The motion to exclude portions of testimony from Timothy Pfeifer and Mary Jo Hudson is **GRANTED**, dkt. [475], the motion to exclude portions of testimony from Mark Browne is **GRANTED in part and DENIED in part**, dkt. [467], and the motion to exclude portions of testimony from Robert Muriel is **GRANTED**, dkt. [468].

---

[4] The parties also appear to have turned a footnote in the CNO Defendants' brief, dkt. 474 at 12 n.10, into a full-fledged dispute about whether Mr. Muriel ever read a financial statement as Director of the Illinois Department of Insurance. *See* dkt. 489 at 5; dkt. 500 at 8–9 n.3. The Court does not address this dispute because Mr. Muriel's statutory-accounting opinions are resolved based on reliability and the CNO Defendants do not appear to argue that he is otherwise unqualified to opine on Conseco Life's financial state. *See* dkt. 474 at 11.

Because this order cites sealed filings, the **Clerk shall docket** it under seal. Any party may file a motion to maintain this order under seal, with proposed redactions, **by April 4, 2025**. If no motion to maintain under seal is filed, the order will be unsealed.

**SO ORDERED.**

Date: 3/26/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

James H Bilton
LOCKE LORD LLP
jbilton@lockelord.com

Taylor F. Brinkman
LOCKE LORD LLP
tbrinkman@lockelord.com

Shelli L. Calland
Weisbrod Matteis & Copley PLLC
scalland@wmclaw.com

Gillian H. Clow
Alston & Bird LLP
gillian.clow@alston.com

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Tamra B. Ferguson
WEISBROD MATTEIS & COPLEY PLLC
tferguson@wmclaw.com

Adam J. Kaiser
ALSTON & BIRD LLP
adam.kaiser@alston.com

Matthew B Nazareth
Locke Lord LLP
300 South Grand Avenue  Suite 2600
Los Angeles, CA 90071

Samuel J. Park
ALSTON AND BIRD, LLP
samuel.park@alston.com

Stephen Parkinson
Weisbrod Matteis & Copley PLLC
sparkinson@wmclaw.com

Phillip Russell Perdew
Troutman Pepper Locke LLP
Rusty.Perdew@troutman.com

Carl C. Scherz
Troutman Pepper Locke LLP
carl.scherz@troutman.com

Joanna H. Schorr
ALSTON & BIRD LLP
joanna.schorr@alston.com

Kristin Shepard
ALSTON & BIRD LLP
kristin.shepard@alston.com

Laura Elizabeth Simmons
ALSTON & BIRD LLP
laura.paley@alston.com

Michael A. Valerio
ALSTON & BIRD LLP
michael.valerio@alston.com

Stephen A Weisbrod
WEISBROD MATTEIS & COPLEY PLLC
sweisbrod@wmclaw.com