UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM JEFFREY BURNETT, JOE H CAMP, <br><br> Plaintiffs, <br><br> v. <br><br> CNO FINANCIAL GROUP, INC., CNO SERVICES LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) No. 1:18-cv-00200-JPH-KMB ) ) ) ) ) ) |

**ORDER ON MOTIONS IN LIMINE**

The parties have filed a combined 33 motions in limine. Dkt. 565; dkt. 572. For the reasons below, those motions are **GRANTED in part and DENIED in part**. A table summarizing the motions and rulings is attached as Appendix A. Consistent with the Court's instructions at the final pretrial conference, and to avoid wasting the jury's time, counsel must raise reasonably foreseeable evidentiary issues in advance outside the presence of the jury—generally before or after the trial day, over lunch, or at a break.

## I.
## Applicable Law

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Still, orders in limine are preliminary and "subject to change when the case unfolds" because actual testimony may differ from a pretrial proffer. *Luce v. United States*, 469

1

U.S. 38, 41 (1984). A trial judge does not bind himself by ruling on a motion in limine and "may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## II.
## Analysis

### A. Plaintiffs' Motions in Limine

#### 1. Motions 4, 5, 6, and 7: Unopposed Motions

Plaintiffs' motions in limine numbers 4 (date Plaintiffs retained counsel), 5 (reference to motions in limine), 6 (financial hardship or effect on the insurance industry), and 7 (alter ego liability/empty chair defense) are unopposed and were **granted** at the final pretrial conference.

#### 2. Motions 1, 3, and 8: Setoff Issues, Settlement Negotiations, and Class Representative Fee Payments

Plaintiffs seek to exclude evidence of (1) amounts they've received that may be set off against any damages, (2) settlement negotiations, and (3) class representative fee payments. Dkt. 572 at 1–5.

Setoffs against any damages the jury awards is an issue of law for the Court to decide. *FDIC v. Chi. Title Ins. Co.*, 12 F.4th 676, 689 (7th Cir. 2021) ("Whether defendant is entitled to a setoff is a question of law."). At the final pretrial conference, the CNO Defendants agreed that setoffs are ordinarily for the Court but argued that the facts here present a unique situation with indivisible damages, so the general principle of law does not apply. The CNO Defendants provide no legal support for that argument—particularly when the damages are monetary and readily calculable—so they have not persuaded the

2

Court that amounts Plaintiffs have received is not a question of law for the Court to decide. This motion is therefore **granted** and the CNO Defendants may not present evidence of (1) payments that may be set off against Plaintiffs' damages unless that evidence is independently admissible for some other purpose, (2) settlement negotiations, and (3) class representative fee payments. Pursuant to this ruling, the CNO Defendants may not present evidence of the class settlement between Plaintiffs and CLIC and any evidence about whether Plaintiffs believed that settlement was fair and reasonable. *See* dkt. 582 at 2–3. That settlement was approved as a fair and reasonable resolution of Plaintiffs' claims *against only CLIC* rather than of their entire claims, *see* dkt. 237 at 4, 26, so the CNO Defendants may not use it to limit any remaining damages. Instead, it is merely a setoff issue for the Court. *See FDIC*, 12 F.4th at 689.

This ruling similarly prohibits evidence that Mr. Burnett received funds from his participation in the RSA and signed an accompanying release of liability. Those are issues for the Court rather than for the jury. *See id.*; *Larky v. Camp Livingston, Inc.*, 255 N.E.3d 1169, 1178 (Ind. Ct. App. 2025) ("[T]he interpretation of a written contract, including a release, is a question of law."). Even if Mr. Burnett "believed" that the RSA "constituted full compensation for any alleged damages," dkt. 582 at 3, the measure of damages that the jury will decide is not based on his belief, but "the loss actually suffered" from not receiving "the benefit of [his] bargain." *Allstate Ins. Co. v. Hammond*, 759 N.E.2d 1162, 1167 (Ind. Ct. App. 2001).

3

### 3. Motion 2: Undisclosed Expert Opinions

Plaintiffs seek to exclude evidence from the CNO Defendants' experts about the value of Mr. Burnett's and Dr. Camp's policies because "no defense expert offered any policy valuations in any report." Dkt. 572 at 2–3.

The CNO Defendants' expert Timothy Pfeifer, however, opined in his report that Plaintiffs suffered no damages and that several assumptions in Dr. Browne's damages calculation report are incorrect and should result in lower policy values. Dkt. 582 at 4–5 (citing Mr. Pfeifer's reports at dkt. 47-1 at 42–45 and dkt. 477-2 at 30–34). At the final pretrial conference, Plaintiffs clarified that they are seeking to exclude only evidence that goes beyond the opinions in Mr. Pfeifer's report.

This motion is limine is therefore **granted in part**—the CNO Defendants' experts may not offer policy valuations or methodologies for evaluating policy valuations that were not disclosed in their reports. *See* Fed. R. Civ. P. 37(c)(1). The motion is otherwise **denied**.

### 4. Motion 9: Testimony of Mary Jo Hudson

Plaintiffs seek to exclude testimony of the CNO Defendants' expert Mary Jo Hudson because her opinions about the RSA are irrelevant. Dkt. 572 at 5–6. The CNO Defendants respond that they intend to call Ms. Hudson "only if she is necessary to rebut the testimony of Dr. Browne and Lisa Harpenau" related to the RSA. Dkt. 582 at 5–7.

This motion therefore implicates the admissibility of evidence regarding the RSA. The jury may hear some evidence about the RSA to the extent it

affected the assumptions Dr. Browne applied in his damages model.  *See* 492-1 at 30 (explaining expense charges imposed under the RSA that Plaintiffs do not challenge).  It's not clear, however, why Dr. Browne's comparisons of his model to the Milliman RSA model used by regulators is relevant or necessary to his calculations or to Plaintiffs' breach-of-contract damages.  *See id.* (opining that the Milliman RSA model "estimated the value of the LifeTrend book of business in terms of the discounted NPV of expected future profits or losses it would generate for Conseco under a range of scenarios.").

There also should be no need for Ms. Hudson to testify regarding Dr. Browne's alternative damages methodology.  *See* dkt. 582 at 6–7.  The CNO Defendants argue that this methodology "falsely presumes that the Plaintiffs had fully paid-up policies indefinitely," so Ms. Hudson should be able to testify that the RSA regulators did not view the Policies as paid up.  *Id.*  But that's not what Dr. Browne presumed.  Dr. Browne's alternative damages model is instead based on Conseco's estimated "cost *to convert* each LifeTrend policy to a fully paid-up policy."  Dkt. 492-1 at 34–35.  And Plaintiffs confirmed at the final pretrial conference that they will not argue that the Policies *were* paid up, but only that Dr. Browne's calculated valuations were checked against what the value of paid-up policies would be.  So while the CNO Defendants may cross-examine Dr. Browne about how "substantially comparable" the Polices were to paid-up policies, Ms. Hudson's expert testimony would not be responsive to that issue.  *See id.*

5

Evidence regarding the RSA at trial should therefore be extremely limited because the probative value—if any—is substantially outweighed by the danger of confusing the issues and misleading the jury by having a mini-trial on tangential issues surrounding the RSA.  Fed. R. Evid. 403; *see Henderson v. Wilkie*, 966 F.3d 530, 538 (7th Cir. 2020) (District courts are "on solid ground" in excluding confusing evidence based on concerns that it would create "a trial within a trial.").  Indeed, Plaintiffs' witness list does not list the RSA as within the scope of Ms. Harpenau's expected testimony.  Dkt. 569 at 3.  The Court therefore **sustains** the CNO Defendants' objection to testimony from Ms. Harpenau that "CLIC and/or the CNO Defendants colluded with state insurance regulators in connection with the [RSA] and that the RSA was intended to further the so-called shock-lapse strategy."  Dkt. 584 at 4 (objections to Plaintiffs' witness list); *see* Tr. Ex. 114.

      Therefore, save for two narrow exceptions, the parties **may not present** evidence regarding the RSA unless they first raise the issue to the Court outside the presence of the jury.  Those exceptions are that the parties **may present** evidence related to the RSA as to (1) Dr. Browne's assumptions from the RSA only when necessary for his damages model; and (2) Plaintiffs' personal knowledge of the regulatory investigation and RSA only to the extent relevant to their decisions to surrender their Policies and resulting damages.[1] *See, e.g.*, Tr. Exs. 20, 31, 44, 46 (RSA-related letters to Burnett).

---

[1] The Court expects the parties to carefully tailor their questions to Mr. Burnett and Dr. Camp regarding the RSA to elicit only testimony about their personal knowledge as relevant to their policy-surrender decisions.

6

Under this ruling, the evidence that the CNO Defendants may want to rebut through Ms. Hudson's testimony should not be elicited. Plaintiffs' motion to exclude her testimony is therefore conditionally **granted**, subject to the Court's rulings at trial.

### B. CNO Defendants' Motions in Limine

#### 1. Motions 2, 13–18, 20, 21, 23, and 24: Unopposed Motions

The CNO Defendants' motions in limine numbers 2 (pre-sale and point-of-sale representations), 13 (settlement negotiations), 14 (claims resolved at summary judgment), 15 (motion to dismiss rulings), 16 (motion for summary judgment ruling), 17 ("golden rule" arguments), 18 ("David and Goliath" evidence), 20 (compensation and net worth), 21 (negative publicity or controversies of insurance companies), 23 (witnesses or evidence not presented), and 24 (reference to motions in limine) are unopposed and were **granted** at the final pretrial conference.

#### 2. Motions 1, 8, 9, and 10: Evidence Exclusive to Breach; Affiliate Payments and Statutory Accounting; Conseco, Inc's Bankruptcy; and Conseco's Sale to Wilton Re

The CNO Defendants seek to exclude "all evidence that Plaintiffs seek to elicit for the purpose of showing a breach of the underlying insurance Policies." Dkt. 565-1 at 2–3. Plaintiffs respond that evidence of breach is also relevant to causation and that "there has to be a reasonable presentation of what the breaches were and how they occurred." Dkt. 593 at 2–4.

The premise of the CNO Defendants' argument is correct—"an important consideration in Rule 403 balancing is the extent to which the defendant

7

actually contests the fact that the evidence tends to prove." *United States v. Bradford*, 905 F.3d 497, 507 (7th Cir. 2018); *see United States v. Gomez*, 763 F.3d 845, 857 (7th Cir. 2014) ("[I]f a defendant offers to concede or stipulate to the fact for which the evidence is offered, additional evidence may have little probative value."). While much evidence relevant solely to breach is likely to be inadmissible, the CNO Defendants' motion is too broad and vague to support a bright-line or inflexible ruling.

Here, the jury's task will be deciding whether Conseco's breaches caused Plaintiffs to surrender their Policies and, if so, what damages they suffered. So, at trial, both sides must be prepared to explain why the evidence they seek to admit is relevant to causation and damages.

That will not prevent Plaintiffs from admitting substantial evidence explaining "what the breaches were and how they occurred," because much of that evidence will also be relevant to causation and damages. For example, there is no objection to testimony about the Policies' terms, structure, and function; what Mr. Burnett and Dr. Camp understood about the Policies; and the communications from Conseco to Mr. Burnett and Dr. Camp. *See* dkt. 569; dkt. 584.

Evidence related to several other subjects, however, is inadmissible because any limited probative value to causation and damages is substantially outweighed by the dangers of confusing the issues and misleading the jury. Fed. R. Evid. 403.

Plaintiffs **may not present** evidence of Conseco's financial state that was outside Mr. Burnett's and Dr. Camp's knowledge without first seeking permission from the Court outside the presence of the jury. While information that Conseco provided to Plaintiffs and that drove their decision-making process is central to determining causation, it's unclear how information unknown to Plaintiffs about Conseco's financial condition relates to the issues of causation and damages. Evaluating an insurance company's financial condition is a complex exercise influenced by many factors. If the jury heard evidence about some of those factors, it would essentially require a mini-trial on the causes and effects of Conseco's financial condition. In the context of this trial involving a claim for breach of contract where breach is admitted, any probative value to causation and damages is substantially outweighed by the risk of confusing the issues, misleading the jury, and wasting time under Rule 403 balancing. *See Henderson*, 966 F.3d at 538 (District courts are "on solid ground" in excluding confusing evidence based on concerns that it would create "a trial within a trial.").

Any probative value of evidence of affiliate payments and statutory accounting issues is similarly unclear and substantially outweighed by the risk of confusing the issues, misleading the jury, and wasting time under Rule 403 balancing. *See* dkt. 565-1 at 22. Even if the CNO Defendants were to open the door to evidence of Conseco's poor financial condition, affiliate payments and statutory accounting principles are tangential to potential prior losses and how they affected Plaintiffs' damages. *See* dkt. 541 (Plaintiffs' arguing, before the

9

CNO Defendants conceded breach, why this evidence is relevant to breach). Moreover, this evidence is related to Plaintiffs' arguments regarding the RSA, *id.* at 5, and as explained above evidence regarding the RSA should be extremely limited because of its own risk of a confusing and misleading mini-trial under Rule 403.

The Court similarly excludes evidence that Conseco's attorneys told the District Court for the Northern District of California that imposing the maximum COI rates under the Policies would cause "cataclysmic financial impacts." *See* Tr. Ex. 169 at 12. In addition to being pulled out of context from Conseco's memorandum in support of a proposed class-action settlement in that court, it raises the same concerns about a tangential mini-trial about Conseco's financial state based on only speculative evidence. *See Henderson*, 966 F.3d at 538.

For the same reasons, Plaintiffs **may not present** evidence regarding Conseco's sale to Wilton Re. Plaintiffs argue that the sale price "is relevant to causation because it shows Conseco's overwhelming success in 'shocking' policyholders like Plaintiffs into surrendering their policies, and the amount of money that CLIC gained or expected to gain by implementing these changes." Dkt. 593 at 12. That's questionable when the sale was announced years after this case's class period closed. *See* dkt. 565-1 at 25. But even if the Court allows evidence of Conseco's "shock lapse" strategy, evidence of Conseco's sale to Wilton Re would invite a time-consuming and complex mini-trial about the myriad factors relevant to the sale price. *See Henderson*, 966 F.3d at 538. At

the final pretrial conference, Plaintiffs could not identify evidence connecting the class's surrenders to the sale price beyond the generic assertion that the surrenders had a positive effect on Conseco's financial condition. This speculation about how some of Conseco's actions may have resulted in a later sale price for the company is inadmissible. *See United States v. Graffia*, 120 F.3d 706, 712 (7th Cir. 1997) ("[T]his type of very speculative theory . . . is properly excluded under Federal Rule of Evidence 403.").

Next, the CNO Defendants' motion to exclude evidence of Conseco, Inc.'s bankruptcy is **granted in part**. Plaintiffs admit that the bankruptcy "is not central to the case," dkt. 593 at 11, and for the reasons above Plaintiffs **may not present** evidence or argument that the bankruptcy motivated Conseco's actions or affected Plaintiffs' damages. *See* dkt. 565-1 at 23–24. The mere fact of the bankruptcy, however, is not prejudicial to the CNO Defendants, so the Court will not require any mention of it to be scrubbed from otherwise relevant evidence. If the CNO Defendants believe that mention of the bankruptcy might prejudice them, they may submit a proposed limiting instruction to be given to the jury on this issue.

Finally, Plaintiffs **may not present** evidence of Conseco's "shock lapse" without first seeking permission from the Court outside the presence of the jury.[2] At the final pretrial conference, Plaintiffs argued that this evidence was

---

[2] At the final pretrial conference, Plaintiffs argued that the "shock lapse" strategy was not raised in a motion in limine, but the CNO Defendants squarely argued in their response to Plaintiffs' witness list that this evidence should be excluded. Dkt. 584 at 1 ("The CNO Defendants also object to any witness testimony regarding CLIC's alleged 'shock lapse strategy,' as such evidence, that was unknown by Plaintiffs Mr. Burnett

11

relevant to causation because it shows that their harm was probable or reasonably foreseeable.  But breach-of-contract causation under Indiana law—which the parties have consistently applied, including in their agreed final jury instructions—turns on "whether the breach was a substantial factor in bringing about the harm."  *WESCO Distr., Inc. v. ArcelorMittor Ind. Harbor LLC*, 23 N.E.3d 682, 709 (Ind. Ct. App. 2014).  Here, that causation question, as the parties agree, asks solely why Plaintiffs surrendered their Policies.  Dkt. 571 at 3 (agreed final instruction on "issues for trial"); dkt. 573-1 at 3–4 (Plaintiffs' proposed verdict forms).  Plaintiffs have not explained how Conseco's *internal* intent or goal in a "shock lapse" strategy could have been a "substantial factor" in Plaintiffs' deliberative decisions whether to surrender when they did not know about it.

Since causation boils down to only Plaintiffs' own surrender decisions, the Court is unpersuaded by Plaintiffs' argument that "shock lapse" evidence is relevant because it made the surrenders foreseeable *to Conseco*.  *See WESCO*, 23 N.E.3d at 708–09 (rejecting an argument based on "foreseeability of the chain of events" for breach-of-contract causation).  That standard is closer to Indiana's tort standard for causation, but Plaintiffs have not explained why it would apply here.  *See J.B. Hunt Transp., Inc. v. Guardianship of Zak*, 58 N.E.3d 956, 972 (Ind. Ct. App. 2016) (In a tort action, "whether or not proximate cause exists is primarily a question of foreseeability.").

---

and Dr. Camp prior to this lawsuit, is wholly irrelevant to the issue of causation and damages.").

12

Foreseeability instead enters the breach-of-contract analysis for damages, since "the measure of damages in a breach of contract action is limited by what is reasonably foreseeable at the time the parties entered into the contract, not what is known at the time of the breach." *WESCO*, 23 N.E.3d at 709–10. That does not support the relevance of "shock-lapse" evidence because Plaintiffs purchased their Policies long before Conseco's breaches. *See Belle City Amusements, Inc. v. Doorway Promotions, Inc.*, 936 N.E.2d 243, 249 (Ind. Ct. App. 2010) ("The test for measuring damages is foreseeability at the time of entry into the contract, not facts existing and known to the parties at the time of the breach."). Therefore, Plaintiffs have not shown how "shock lapse" evidence would assist the jury in determining causation and any resulting damages. *See Rogier v. Am. Testing & Eng'g Corp.,* 734 N.E.2d 606, 614 (Ind. Ct. App. 2000) ("[D]amages which do not arise naturally from the breach of contract, or which are not within the contemplation of the parties at the time the contract is entered into, are not recoverable.").

Moreover, introduction of "shock lapse" evidence, which Plaintiffs have explained would be offered to show that Conseco intended and could foresee Plaintiffs' surrender of their Policies, creates the danger of unfair prejudice to the CNO Defendants. *See* Fed. R. Evid. 403. If Plaintiffs intend to seek leave of Court to elicit "shock lapse" evidence at trial, they **may file** a pretrial brief **by June 9, 2025** explaining (i) its probative value to the issues that the jury will decide; and (ii) why any probative value isn't substantially outweighed by the risk of unfair prejudice, confusing the issues, and wasting time.

### 3. Motion 3: Terms "Vanishing Premium" and "5-Pay"

The CNO Defendants seek to exclude Plaintiffs' use of the terms "vanishing premium" and "5-pay" because they are "pejorative." Dkt. 565-1 at 14–15. They have not, however, explained why these terms are pejorative or how they would suffer prejudice if the Court did not require Plaintiffs to scrub the evidence—including Conseco's own records—of the terms.[3] *See id.* This motion is therefore **denied**.

### 4. Motions 4 and 12: Evidence Related to Other Policyholders, the Brady MDL, and Other Lawsuits

The CNO Defendants seek to exclude evidence related to policyholders other than Mr. Burnett and Dr. Camp and references to the Brady MDL and other lawsuits against the CNO Defendants or Conseco. Dkt. 565-1 at 15–18, 26–29. Plaintiffs respond that they "do not intend to introduce any evidence that is unique to [other] policyholders, but that the motion is overbroad because some evidence references, for example, the Brady MDL or the class. Dkt. 593 at 5–6. Plaintiffs also "do not anticipate mentioning any lawsuits other than the" MDL. *Id.* at 12–13.

These motions are therefore **granted in part** as to evidence related to individual policyholders other than Mr. Burnett and Dr. Camp and as to other lawsuits except the MDL. This does not exclude passing references to the MDL, or that this case is a class action, or testimony about other policyholders

---

[3] Indeed, the term "vanishing premium" is used in the parties' joint jury instructions, which the CNO Defendants agreed to. Dkt. 571 at 5.

14

that "applies equally to Plaintiffs." *Id.* at 5–6.[4] And Dr. Browne is entitled to explain (and be cross-examined on) his methodology in calculating damages, so this order does not exclude limited references to the class for that purpose.

### 5. Motion 5: Dr. Browne's Damages Testimony

This motion was **denied** as explained in the Court's order on the CNO Defendants' motion for pretrial determination of law. Dkt. 602.

### 6. Motion 6: References to Class Size or Composition

The CNO Defendants seek to exclude references to class size and composition as irrelevant. Dkt. 565-1 at 19. As explained above, the jury will hear that this is a class action. But the number of individuals in the class is not relevant to any of the issues that the jury will have to decide, and any probative value is substantially outweighed by the risks of confusing those issues and causing unfair prejudice. *See* Fed. R. Evid. 403. This motion is therefore **granted**.

### 7. Motions 7 and 11: Alter Ego Liability and Bifurcated Trial

The CNO Defendants seek to exclude evidence related to alter ego liability, including references to the CNO Defendants as alter egos of Conseco and to the bifurcated trial. Dkt. 565-1 at 19–22, 26. As addressed at the final pretrial conference, the Court will instruct the jury in the preliminary and final instructions regarding the CNO Defendants' presence in this case. Because

---

[4] As addressed at the final pretrial conferences, the parties may request a limiting instruction regarding references to the MDL or similar testimony.

that addresses Plaintiffs' concern that the jury should have an explanation on that issue, dkt. 593 at 10, these motions are **granted**.

### 8. Motion 19: Plaintiffs' Emotional Distress

The CNO Defendants seek to exclude evidence that Mr. Burnett and Dr. Camp suffered emotional distress.  Dkt. 565-1 at 34–35.  Plaintiffs respond that they "do not intend to argue that they are entitled to additional damages because insurance coverage disputes are difficult experiences" but that Mr. Burnett and Dr. Camp will testify that Conseco's actions caused them "financial hardship that caused them to surrender their policies." Dkt. 593 at 13–14.  Because the jury must determine causation, Mr. Burnett and Dr. Camp may concisely testify about whether their decision to surrender the policies was difficult, and if so why.  This motion is otherwise **granted**.

### 9. Motion 22: Out of Town Attorneys

The CNO Defendants seek to exclude references to its attorneys as "out-of-town" lawyers.  This motion is **granted as to all counsel**.

### III.
### Conclusion

The parties' motions in limine are **GRANTED in part** and **DENIED in part** in accordance with this order.  Dkt. [572]; dkt. [565].   The CNO Defendants' prior motion to clarify the scope of the jury trial is **DENIED as moot** under the motions in limine and their breach concession.  Dkt. [530].

No party shall reference or attempt to elicit evidence that has been provisionally excluded by this order without first seeking permission from the

16

Court outside the presence of the jury. Each party **shall ensure** its witnesses' compliance with this order.

Consistent with the Court's instructions at the final pretrial conference, and to avoid wasting the jury's time, counsel **must raise** reasonably foreseeable evidentiary issues in advance outside the presence of the jury—generally before or after the trial day, over lunch, or at a break.

Last, a word of caution about the Court's evidentiary rulings. This case presents numerous complex issues, and the Court has carefully crafted its pretrial evidentiary rulings based principally on Rule 403 balancing. As with most pretrial evidentiary rulings, the Court's evidentiary rulings in this case are tentative and subject to change depending on the evidence introduced and arguments made at trial. The probative value of much of the excluded evidence is relative, so counsel should carefully consider the effect that admission of evidence may have on Rule 403 balancing decisions that the Court has made. In other words, admission of certain evidence may open the door to admission of other evidence that is currently excluded by the Court's pretrial rulings.

**SO ORDERED.**

Date: 6/4/2025

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

## APPENDIX A—TABLE OF MOTIONS AND RULINGS

| Plaintiffs' Motions in Limine | | |
|---|---|---|
| # | Motion | Ruling |
| 1 | Setoff Issues | Granted |
| 2 | Undisclosed Expert Opinions | Grant in part |
| 3 | Settlement Negotiations | Granted |
| 4 | Date Plaintiffs Retained Counsel | Granted |
| 5 | References to Motions in Limine | Granted |
| 6 | Financial Hardship or Effect on the Insurance Industry | Granted |
| 7 | Alter Ego Liability/Empty Chair Defense | Granted |
| 8 | Class Representative Fee Payments | Granted |
| 9 | Testimony of Mary Jo Hudson | Granted, including most RSA evidence |

| CNO Defendants' Motions in Limine | | |
|---|---|---|
| # | Motion | Ruling |
| 1 | Evidence Exclusive to Breach | Granted, including as to "shock lapse" evidence |
| 2 | Pre-Sale and Point-of-Sale Representations | Granted |
| 3 | Terms "Vanishing Premium" and "5-Pay" | Granted |
| 4 | Evidence Related to Other Policyholders | Granted in part |
| 5 | Dr. Browne's Damages Testimony | Denied |
| 6 | References to Class Size or Composition | Granted |
| 7 | Alter Ego Liability | Granted |
| 8 | Affiliate Payments and Statutory Accounting | Granted |
| 9 | Conseco Inc.'s Bankruptcy | Granted in part |
| 10 | Sale to Wilton Re | Granted |
| 11 | Bifurcated Trial | Granted |
| 12 | Brady MDL and Other Lawsuits | Granted in part |
| 13 | Settlement Negotiations | Granted |
| 14 | Claims Resolved at Summary Judgment | Granted |
| 15 | Motion to Dismiss Rulings | Granted |
| 16 | Summary Judgment Ruling | Granted |
| 17 | "Golden Rule" Argument | Granted |
| 18 | "David and Goliath" Evidence | Granted |
| 19 | Plaintiffs' Emotional Distress | Granted in part |
| 20 | Compensation and Net Worth | Granted |
| 21 | Negative Publicity or Controversies | Granted |
| 22 | Out of Town Attorneys | Granted |
| 23 | Witnesses or Evidence Not Presented | Granted |
| 24 | References to Motions in Limine | Granted |